CLAY COUNTY, IOWA, Appellee, v. W. L. MEYERS, Admr. of the Estate of Eliza Williams, et al., Appellants.

**Insane persons:** SUPPORT: LIABILITY OF ESTATES: ENFORCEMENT. The
1 estates of insane persons are not relieved from liability for their support because such patients are supported at public charge; and where such expense has been paid by the county it may enforce col-

lection from the estate by judgment and execution the same as other claims are enforced.

Same: ESTATES OF INSANE PERSONS: MANAGEMENT. The governing principle in the management of an insane person's estate is the interests of the insane person, rather than the interests of those who may have a right of succession; and the property of the estate may be converted from realty into personalty, or from personalty into realty, as the interests of the lunatic may demand.

Same. Where it appears to be for the best interests of an insane person the court may order the sale of the homestead, and that the proceeds be set apart and treated as exempt realty, until such time as the ward may recover and for a reasonable time thereafter.

Same: SUPPORT: EXEMPTIONS: LIABILITY OF ESTATE. Where the guardian of an insane widow, who took nothing under her husband's will, elected for her to take her distributive share in the husband's property, and the same was set off so as to include the homestead, which was sold and the proceeds ordered to be held by the guardian as exempt realty until her death, or until a reasonable time after her recovery, upon her death prior to recovery the fund was no longer exempt, but became assets of her estate and subject to a claim by the county for her support while insane.

Same: CLAIMS: PREFERENCE. Where but a single claim against an estate is involved in the litigation and there is no reference to any other in the evidence, no issue of preference is involved for consideration.

*Appeal from Clay District Court.*—HON. A. D. BAILIE, Judge.

FRIDAY, APRIL 11, 1913.

APPELLEE filed a claim against the administrator for $2,347.07 for the care of deceased at the Hospital for Insane. The only money or property in the hands of the administrator was $1,600, the proceeds of the sale by her guardian of certain real estate alleged to have been her homestead. The trial court allowed the claim, and held that the money was not exempt, and directed that it be applied on appellee's claim. A further statement of facts appears in the opinion. Defendants appeal.—*Affirmed.*

*Geo. A. Heald,* for appellants.

*O. A. Hammand, Fred Jensen* and *Fred Kirkpatrick,* for appellee.

PRESTON, J.—It appears from the agreed statement of facts that in 1893 Eliza Williams was adjudged to be insane and committed to the Hospital for Insane, where she remained until her death in 1911. In 1894 John E. Williams, her husband, died testate, leaving two children. A son of said Eliza by a former husband survived her. The administrator and these three children are the appellants. At the time of his death John E. Williams owned one hundred and sixty acres of land in Clay county, which he occupied as his home with his family until his death, except that his wife had been taken to the hospital. The house and barns were located on one forty acres of the land, but neither John E. nor his wife had ever selected, marked out, or plated their homestead. John E. left a will, by the terms of which he gave to his son Francis all his real estate and personal property, out of which the son was to pay $1,500 to his sister. The will further provided: "To my beloved wife, Eliza Williams, I will nothing for the reason that she is now in the Insane Asylum at Independence, Iowa, and is not expected to ever again recover her mind, but it is hereby ordered and desired by me that, should she again recover her mind and need a home and desire one with my son, then he shall provide her a home so long as she shall live." In October, 1898, a guardian was appointed for said Eliza. In December of that year the guardian filed an application for that purpose, and was permitted to elect for his ward to take her distributive share, and in February, 1899, the court entered a decree, after full hearing by all parties concerned, setting off to the said Eliza Williams, insane, forty acres of said quarter section as her distribu⁺ive share and homestead. During the pendency of this last named action a written agreement was entered into between plaintiff and defendants, by which it was agreed that said forty acres

should be measured and set apart to said Eliza as her distributive share, and that the parties consented and agreed that the court should apportion and set apart to her the said forty acres. The decree recognized the agreement and incorporated it therein, and held that the will was void so far as it purports to affect the rights of the wife.

In April, 1899, Clay county filed a petition showing that it had paid out for the support of said insane person $1,067.63, and asking that the court order the same paid out of the funds of the estate of said insane person, and at the September term, 1899, the court made an order directing that the guardian pay from time to time into the treasury of the county the income from said real estate, over and above the costs and expenses of guardianship. In 1900 the guardian made application to sell this real estate, an order of sale was made, and the property was sold to Francis Williams, which sale was approved and deed issued. In 1906, in an action in which the three children were parties, the court entered a decree in regard to the prior proceedings had and the sale of the forty acres, decreed that the sale was involuntary, and that the money and funds in the hands of the guardian in the sum of $1,600, being the proceeds of the sale of said real estate, is exempt in the hands of the guardian, and ordered that said $1,600 should be held and treated as exempt realty until the death of said Eliza Williams, or until such time as she may recover from her insanity, and a reasonable time thereafter. In this case, and before the decree, the county withdrew its application without prejudice as to said $1,600 and the decree provided that nothing therein should be construed as affecting adversely the interests of the county in the estate of said insane person in case of her recovery or decease, and that nothing therein should be held to affect adversely any interests of the three children, which they then had, or might thereafter acquire to said real estate.

Said Eliza Williams was an insane person from the time of her commitment to the hospital until her death. W. L.

Meyers, a son of said Eliza, is the administrator of her estate. At her death the guardian paid said $1,600 to the administrator. Said $1,600 was the only property of said deceased at the time of her death. It is conceded that Clay county has a claim against her estate for $2,347.07 for the expense for her keeping at the state hospital. Prior to the sale of the land the court had ordered the income expended for the benefit of the ward; after the sale the interest and income were disposed of in like manner, but the principal sum of $1,600 was kept intact.

It is claimed by appellants that the court erred in finding that the money in the hands of the administrator was not exempt from execution, and erred in ordering it to be applied on payment of plaintiff's claim. Appellants claim that the proceeds of the sale of the forty acres still retain a homestead character, and are exempt from the payment of the debts of said Eliza Williams. This is the question in the case.

The case has been well presented by counsel for both sides, but neither have been able to find a case in point. A number of legal propositions are advanced and cases cited in their support. As to some of these there is no controversy. As we view it, the decision must turn, not so much on the law as it relates to homesteads generally, but rather on the effect of the prior orders and decrees of the district court. These orders and decrees were not appealed, and are binding on the parties.

1. INSANE PERSONS: support: liability of estates: enforcement. Code section 2297 provides, in substance, that estates of insane patients are not released from liability because such patients are supported at public charge, and that payments made by the county may be collected. The collection of a claim of a county is to be enforced by judgment and execution as other claims. *Gressly v. Hamilton County*, 136 Iowa, 722.

The governing principle in the management of the estate is the lunatic's interest, not that of those who may have

eventually rights to succession.   Upon this principle, it is

2. SAME: estates of insane persons: management.

settled that the property of a lunatic may be converted from realty into personalty, or from personalty into realty, whenever it shall appear to be for the interest of the lunatic to make such change, without regard to the contingent interests of his real and personal representatives.   16 Am. & Eng. Enc. of Law (2d Ed.) 589.

The court had authority to sell this land, if in its judgment it was for the best interest of the ward.   The court properly guarded the interests of this unfortunate ward who,

3. SAME.

for eighteen years, has been supported at the expense of the county, and wisely provided that the proceeds "should be held and treated as exempt realty, until the death of said Eliza Williams, or until such time as she may recover from her insanity, and a reasonable time thereafter."  Mrs. Williams was not occupying the homestead at the time of her husband's death, nor did she or any of the children occupy it after his death.

The will of her husband gave her nothing, but her guardian, for her, elected to take under the law.   Her distributive share was set off to her so as to include the home-

4. SAME: support: exemptions: liability of estate.

stead.   Before the land was sold, she would have had the right, under other conditions, to occupy the land as her homestead.   She did not, and under the circumstances could not, occupy it. Had she been sane and occupied the land as a homestead and sold it, she would have had a reasonable time to reinvest the proceeds in another homestead, but, had she not so reinvested within a reasonable time, the exemption would have been lost.   The court sold it for her, and preserved her rights, as well as it was possible to do under the circumstances, for her action and election in case of recovery. She did not recover, and the proceeds were not reinvested. Nor was it at any time possible to do so for her use as a homestead.   It has been held that the proceeds of the sale of

a homestead are not exempt from execution unless the sale is for the purpose of procuring a new homestead, and that the burden of proof is upon the party claiming the exemption to show an intention to reinvest in another homestead. *Huskins v. Hanlon*, 72 Iowa, 37.

In the case at bar it was not possible for Mrs. Williams to form any intention or to carry it out because of her insanity. The court in its decree left the matter in such a way as to permit her within a reasonable time after her recovery, if she should recover, to exercise her right to reinvest. But she did not recover. The other alternative provided for in the decree (her death) did take place. The rights of appellants are no greater than the rights of the deceased ward. The decree divested the funds of any homestead character unless Mrs. Williams should recover, and within a reasonable time thereafter exercise her rights under the decree. This was impossible, in view of her death, and at her death the fund became a part of the assets of her estate. The heirs cannot, after the decease of their mother, come in and claim as exempt a fund which she may not have used to re-establish a homestead even had she recovered. There is a wide difference between an actual homestead, as claimed by counsel for appellants, and a fund which could be converted into a homestead only by the election of a person to whom it belonged, and when such election has not been and cannot now be exercised. We are cited by appellants to *Kaiser v. Seaton*, 62 Iowa, 463, and similar cases, but we think they are not applicable. In the *Kaiser* case a part of the homestead was condemned for railway right of way purposes, but the buildings were not disturbed, and the premises were not deprived of their character as a homestead. It was held that the money paid by the railway company was exempt for a reasonable time, on the theory that the owner is entitled to the money to repair or replace the exempt property, and that he should have a reasonable time to so use the money if he sees fit. There are cases where the proceeds are exempt the same as the

property, but for the reasons given we think that rule does not apply to the facts of the present case.

Other cases are cited to the effect that funds arising from the insurance of exempt premises are exempt, and another to the effect that where the husband abandons the homestead, and the wife has been placed in an asylum, will not deprive the adult children of their right to possession of the homestead as long as such right remains in the mother, and other cases which have been examined, but we think do not apply to the facts of this case, and we will not further discuss them.

The suggestion that the judgment of the trial court was in effect to make the claim of plaintiff a preferred claim is not before us. This question is not referred to in the agreed statement of facts nor elsewhere in the record. It does not appear that there were any other unpaid claims. We are of the opinion that the judgment of the district court was right, and it is *Affirmed*.

5. SAME: claims: preference.