Note.—See under (1) 3 C. J. p. 1447, §1607; 2 R. C. L. p. 176. (2) 19 C. J. p. 330, §768; 1 R. C. L. p. 946: 1 R. C. L. Supp. p. 289; 4 R. C. L. Supp. p. 64; 5 R. C. L. Supp. p. 56. (3) 19 C. J. p. 253, §588; p. 260, §608; p. 262, §610; p. 264, §611. (4) 19 C. J. p. 230, §546; anno, 25 A. L. R. 355; 42 A. L. R. 315; 1 R. C. L. p. 910; 1 R. C. L. Supp. p. 280; 4 R. C. L. Supp. p. 60; 5 R. C. L. Supp. p. 54; 6 R. C. L. Supp. p. 47.

---

BOARD OF COM'RS OF LOGAN COUNTY v. STATE ex rel. SHORT, Atty. Gen.

No. 17411—Opinion Filed Feb. 15, 1927.

(Syllabus.)

1. **Counties—Validity of Claims Against— Necessity for Statutory Authority.**

One who demands payment of a claim against a county must show some statute authorizing it, or that it arises from some contract. expressed or implied. which finds authority of law.

2. **States—Educational, Penal, and Other Institutions for Public Good Made State Charge by Constitution.**

Under article 21 of the Constitution of Oklahoma. educational, reformatory. and penal institutions and those for the benefit of insane. blind, deaf and mute, and such other insitutions as the public good may require. shall be established and supported by the state.

**3. Paupers—Counties Charged with Support.**

Section 3, article 17, of the Constitution of Oklahoma requires the counties to provide for those inhabitants who, by reason of age, infirmity or misfortune, may have claims upon the sympathy and aid of the county.

**4. Constitutional Law—Distinct Policies Affirmed in Constitution not subject to Change by Legislature.**

The affirmation of a distinct policy upon any specific point in a state Constitution implies the negation of any power in the Legislature to establish a different policy.

**5. Counties—Unconstitutionality of Statute Imposing Upon Counties the Expense of Patients in State Hospitals for Insane.**

Chapter 75, article 6, C. O. S., 1921, as amended by chapter 70, Session Laws, 1925, in so far as it imposes the expenses of maintaining public patients in the state hospitals for the insane on the county of commitment or residence, is in conflict with article 21 of the Constitution of Oklahoma, and void.

Error From District Court, Logan County; Chas C. Smith, Judge.

Action by the state ex rel. George F. Short, Attorney General, against the Board of County Commissioners of Logan County. Judgment for plaintiff, and defendant appeals. Reversed.

George W. Partridge, County Attorney of Logan County, for plaintiff in error.

George F. Short, Atty. Gen., and Chas. Hill Johns, for defendant in error.

MASON, V. C. J. The Legislature, in 1917, passed an act known as the "Lunacy Law of 1917", which appears as chapter 75, article 6, C. O. S. 1921 (section 8280 to 8325, inclusive), relating to the admission of the insane to the state hospitals and providing for the charges for the care and maintenance of such patients to be paid, in certain instances, by the county in which such patients may reside.

Section 8291, supra, outlines the procedure for having one adjudged insane and incarcerated in one of the state hospitals. It also provides that patients be classified as public or private patients, and further provides:

"In case the admission of such insane person be ordered as a public patient, then the county in which such person is a resident shall be liable to the state for the support of such patient. * * *"

Section 8295, supra, among other things, provides that at the time of such hearing a guardian be appointed for such insane as have property, and that the county be re-imbursed from the patient's estate for certain portions of his expenses in said institution.

Section 8296, supra, makes the county from which such public patient comes liable to the state for a certain portion of the expense of keeping him in such institution and authorizes and provides a method for the county to be reimbursed by the relatives of such insane in certain cases. Said section was amended by chapter 70, Session Laws 1925.

This action was begun by the defendants in error against the board of county commissioners of Logan County to recover cost and charges incurred by the confinement in Central State Hospital for the Insane at Norof 97 persons who have been adjudged public patients and who reside in said county and whose estates and relatives, and they themselves had not the financial ability to pay their expenses.

The defendant demurred to the petition, which was overruled, and the defendant then filed an unverified answer denying the allegations of the plaintiff's petition, after which the court sustained plaintiff's motion fo: judgment on the pleadings and rendered judgment in favor of the plaintiff and against the defendant for $27.090.92. Motion for new trial was presented and overruled, and the defendant appeals.

Many assignments of error are urged, but the only question we deem it necessary to decide is whether or not Logan county is liable for the care and maintenance of public patients incarcerated in said hospital upon a commitment of the county court of said county as public patients.

The law is well established in this jurisdiction that one who demands payment of a claim against a county must show some statute authorizing it, or that it arises from some contract, expressed or implied. which finds authority of law; and it is not sufficient that the services preformed for which payment was demanded are beneficial. Board of Com'rs of Washita County v. Brett, 32 Okla. 853, 124 Pac. 57; Welker v. Annett, 44 Okla. 520, 145 Pac. 411; Board of County Com'rs of Noble County v. Whitney, 73 Okla. 160, 175 Pac. 112.

Under chapter 75, article 6, supra, as amended by chapter 70, Session Laws 1925, the county was liable, unless, as contended for by plaintiff in error, said legislative provisions are in conflict with the Constitution.

When an act of the Legislature is assailed as unconstitutional, the objector assumes

the burden of showing either that it is an exercise of authority not legislative in its nature, or that it is inconsistent with some provision of the federal or state Constitutions, and all presumptions are in favor of legislative enactments.

Article 21 of the state Constitution reads as follows:

"Educational, reformatory, and penal institutions, and those for the benefit of the insane, blind, deaf, and mute, and such other institutions as the public good may require, shall be established and supported by the state in such manner as may be prescribed by law."

The nature of the legislative enactments under consideration is plain. They attempt to place the cost of supporting and maintaining the insane on the respective counties. If the state has a duty of "supporting" hospitals for the insane, this, in our opinion, would include the cost of supporting the inmates thereof.

The word "support" is defined in 37 Cyc. 608, as follows:

" * * * As a verb, to bear, by being under; to sustain; to supply with funds for the means of continuing. * * * "

"Support," according to Webster's New International Dictionary, means to sustain; to furnish with funds or means for maintenance; to maintain; to provide for; as, to support a family; to enable to continue; to carry on.

The mandatory provisions of the Constitution of this state are that such hospitals for the insane shall be "established and supported by the state." This is what the people in adopting our Constitution, have said that the state shall do, and this, in our opinion, is exactly what the Legislature has undertaken to say the counties shall, and the state shall not do. This being so, the act is undoubtedly void. The Constitution, of course, does not expressly inhibit the power the Legislature has assumed to exercise, but an express inhibition is not necessary. The affirmation of a distinct policy upon any specific point in a state Constitution implies the negation of any power in the Legislature to establish a different policy. The presumption is that the positive provisions of a Constitution are mandatory and not merely directory, and there is nothing to overcome this presumption as to the provisions under consideration. On the contrary, it is strongly supported by the consideration that section 3, article 17, of the Constitution provides that the counties shall provide for those inhabitants who, by reason of age, infirmity, or misfortune may have claims upon the sympathy and aid of the county.

It appears, therefore, that it was intended that the state should "establish and support" educational, reformatory, and penal institutions, as well as those for the benefit of the insane, blind, deaf and mute. These institutions are required by the public good in a sense wholly different from any in which asylums for paupers can be said to be for the public good. Society looks to no ulterior or contingent advantage from the support of the poor. They are supported for their own good exclusively and simply because humanity impels us to relieve their necessities. This policy of local relief in charity cases has prevailed in England and in this country for centuries.

It is different with respect to the insane and others mentioned in article 21, supra. If an insane man is restored to his reason by treatment in a hospital, there is a positive gain to the community; if he is incurable, there is a negative advantage to the public in keeping him under restraint, and so preventing him from doing mischief. Those incarcerated in penal institutions may be educated and reformed; otherwise, the public may be protected by their lack of freedom. The blind and deaf and dumb may be educated and trained in institutions specially adapted for the purpose into useful, self-supporting citizens, thus making them contributors to the general good instead of leaving them as a burden on others. These institutions are emphatically for the public good as contra-distinguished from the good of mere objects of charity.

It requires but very little argument to see why the state should establish and support institutions for the insane and the respective counties should care for those who, by reason of age, infirmity, or misfortune are objects of charity. An insane person in most, if not all cases needs more than mere maintenance. He often needs restraint, confinement, medical attendance, and peculiar care and treatment.

Such institutions, therefore, require professional people of great skill, ability, and training in that line of work, and the expense would be such that each county could not, and no doubt would not, attempt such work on the same scale as the state. For this reason, the framers of the Constitution, and the people in adopting it, never intended that the proper care of the unfortunate insane should be impeded or impaired by

persons who might be desirous of lowering taxes in a single community.

We must conclude, therefore, that it is the duty of the state. not only to establish such hospitals for the insane, but also to support or sustain such hospitals and to "supply them with funds for the means of continuing," and that any attempt of the Legislature to require the counties of the state to support and maintain such hospitals, or any patients therein, is contrary to the intention of the Constitution and is void.

Some contention is made that the words, "in such manner as may be prescribed by law," at the close of article 21 of the Constitution, authorizes the enactment of the legislation under consideration. We see no merit in this contention. This phrase merely provides that the manner of supporting such institutions by the state may be prescribed by law. By no stretch of imagination can we see where it negatives the idea that such institutions are to be supported by the state. That support must come from the state and the burden cannot be shifted. either directly or indirectly, onto the shoulders of the counties.

We are not unmindful of the rule announced in the following cases: State v. Pierce County (Wash.) 231 Pac. 801: Price v. Huwe, 105 Ohio St. 304, 137 N. E. 168; State ex rel. McCue v. Lewis (N. D.) 119 N. W. 1037; Kaiser v. State (Kan.) 102 Pac. 454. We have carefully read these cases, some of which do not involve a constitutional provision similar to ours. The arguments advanced in the other cases do not. appeal to us as being sound, and we decline to follow the same.

Therefore. we must conclude. from the reasons herein stated, that the portions of the legislative enactments under consideration. which attempt to make the respective counties liable for a portion of the expense of supporting inmates from said counties in the state hospitals for the insane, are in conflict with article 21 of the Constitution of Oklahoma and void, and for that reason the judgment of the trial court must be reversed.

BRANSON, C. J., and PHELPS. LESTER, HUNT. CLARK, RILEY, and HEFNER. JJ., concur.

Note.—See under (1) 15 C J. p. 562, §264. (2) 32 C. J. p. 687. §373: 36 Cyc. p. 869. (3) 30 Cyc. p. 1067 (Anno). (4) 12 C. J. pp. 719. 720 §73. (5) 15 C. J. p. 563, §264; 32 C. J. p. 687, §373.