(No. 5700.   February 20, 1931.)

STATE ex rel. C. K. MACEY, Commissioner of Public Welfare, Appellant, v. ITHA G. JOHNSON, Guardian of the Person and Estate of MYRTLE O. WOODFIN, an Incompetent Person, Respondent.

[296 Pac. 588.]

Fred J. Babcock, Attorney General, and Z. Reed Millar, Assistant Attorney General, for Appellant.

A. H. Oversmith, for Respondent.

GIVENS, J.—Respondent, guardian of a patient confined in a state insane asylum, sued by appellant under C S., sec. 1190, amended 1921 Sess. Laws, p. 388, successfully demurred, in the trial court, to such action on the ground that said statute is in conflict with this portion of sec. 1, art. 10, of the Constitution: "Institutions . . . . for the benefit of the insane . . . . shall be established and supported by the state in such a manner as may be prescribed by law," and sec. 13, art. 1, contending "established and supported by the

state'' excludes enforced contribution from the inmate, his estate or relatives, and that the fixing by the medical superintendent of the sum to be paid is an unwarranted delegation of legislative authority and does not afford due process.

Section 1190 as amended reads thus:

''The court must inquire into the ability of the feeble minded or insane person committed by it to a sanitarium or insane asylum, to pay for his or her transportation to such sanitarium, and to bear the actual charges and expenses, or any part thereof, for the care and safe-keeping for the time that such person may remain in such sanitarium or asylum. In case a feeble minded or insane person committed to a sanitarium or asylum, under the provisions of this chapter, is possessed of real or personal property sufficient to pay such charges and expenses for his or her care and safe-keeping, the court must appoint a guardian for such person and estate, who is subject to all the provisions of the general laws of this state in relation to guardians and wards, as far as the same are applicable; and when there is not sufficient money in the hands of the guardian, the court may order a sale of property of such feeble minded or insane person, or as much thereof as may be necessary, as provided by law, and from the proceeds of such sale, the guardian must pay said expenses and . . . . the charges for his or her care and safe-keeping, or as much thereof as possible, to the commissioner of public welfare, the sum fixed upon by the medical superintendent of such institution each month . . . . for the maintenance of such ward. . . . .

''When a feeble minded or insane person has been admitted to a sanitarium or asylum, and the commitment papers do not show the appointment of a guardian of the estate of such person by the court having jurisdiction, the commissioner of public welfare may cause an inquiry to be made as to the financial circumstances of such feeble minded or insane person and of the relatives of such person legally liable for his or her support, and if he finds that such person or said relatives, legally liable for his or her support,

are able to pay the expenses of the commitment and the charges for the care and safe-keeping of such person, in whole or in part, it shall be the duty of the commissioner of public welfare to collect such expenses, and such charges, and if necessary to institute in the name of the state, a civil suit against the person, or persons, liable therefor

·"The following relatives shall be bound by law to provide for the expenses and charges for the care and safe-keeping of such feeble minded or insane persons referred to in this act: the husband for the wife, and the wife for the husband; the parent for his or her child or children, and the children for their parents."

The only case called to our attention, holding a statute of this kind unconstitutional, under a Constitution containing the words "establish and support," is *Board of Commrs. of Logan County v. State ex rel. Short*, 122 Okl. 268, 254 Pac. 710. The Oklahoma court in sustaining such inhibitory construction of its Constitution said:

"The constitution, of course, does not expressly inhibit the power the legislature has assumed to exercise, but an express inhibition is not necessary. The affirmation of a distinct policy upon any specific point in a state constitution implies the negation of any power in the legislature to establish a different policy. The presumption is that the positive provisions of a constitution are mandatory, and not merely directory, and there is nothing to overcome this presumption, as to the provisions under consideration. On the contrary, it is strongly supported by the consideration that section 3, article 17, of the constitution, provides that the counties shall provide for those inhabitants who, by reason of age, infirmity, or misfortune, may have claims upon the sympathy and aid of the county."

We believe this reasoning is inapplicable herein because our Constitution is not a delegation of power, but a restriction (sec. 21, art. 1), and unless the legislature is expressly prohibited by the Constitution, it has plenary power. (*St. Joe Improvement Co. v. Laumierster*, 19 Ida. 66,

112 Pac. 683; *Idaho Power & Light Co. v. Blomquist,* 26 Ida. 222, Ann. Cas. 1916E, 282, 141 Pac. 1083; *Ingard v. Barker,* 27 Ida. 124, 147 Pac. 293; *State v. Moore,* 36 Ida. 565, 212 Pac. 349.) Not only is the legislature not prohibited, but is expressly authorized to determine how the institutions enumerated shall be maintained. The phrase "as may be prescribed by law," has been broadly construed. (*St. Joe Improvement Co. v. Laumierster, supra,* at p. 69.)

The cited case is to be further distinguished because the opinion placed reliance in holding that a county could not be compelled to contribute to the maintenance of a state institution for the insane, on sec. 3, art. 17, of the Oklahoma Constitution as follows:

"The several counties of the state shall provide, as may be prescribed by law, for those inhabitants who by reason of age, infirmity, or misfortune, may have claims upon the sympathy and aid of the county."

The court argued that this provision was a declaration that the counties might not be required to contribute to the care of the insane because the insane were provided for in the state institutions authorized by sec. 1, art. 21, and though the statute empowering counties to recompense themselves from the estate of the inmate was cited, such statute was not considered or directly passed on. We have no constitutional provision similar to sec. 3, art. 17, quoted above, though as to insane defendants in a criminal action we have C. S., sec. 9172.

Sec. 1, art. 10, is a direction to establish the institution, and authorizes state support but does not make such support exclusive nor prescribe how or from what sources the necessary funds shall be obtained, but leaves that to the legislature. Respondent argues for the policy declared. The policy is that there shall be state institutions, the manner of establishment and support thereof by the state to be as prescribed by the legislature, and state support may come from many sources. To sustain this legislation it is not

necessary that the Constitution authorize it; it is sufficient if the Constitution does not prohibit it.

The substance of this statute has been on the books since 1887, and by sec. 2, art. 21, of the Constitution, unless repugnant to the Constitution, was continued in force. The legislature by the amendment of 1921 has in effect construed the Constitution as not adversely affecting this statute, which legislative attitude, though not binding, is entitled to consideration (*Fralick v. Guyer*, 36 Ida. 648, 213 Pac. 337); and the territorial and state legislatures have thus declared their policy in this matter. The language in the Constitution does not indicate a desire by the framers thereof to abrogate the substance of the statute in question, or change the situation existing before statehood, when the territory had an insane asylum. (Rev. Stats. 1887, chap. 1, title V.)

It would be giving the constitutional provision involved a narrow construction to hold otherwise. While the policy of the Constitution must prevail over the legislative policy, incompatibility between the Constitution and the statute must be clear and strong before the act should be held unconstitutional. (*Noble v. Bragaw*, 12 Ida. 265, 85 Pac. 903; *Gillesby v. Board of Commrs.*, 17 Ida. 586, 107 Pac. 71; *Smallwood v. Jeter*, 42 Ida. 169, at 182, 244 Pac. 149; *Packard v. O'Neil*, 45 Ida. 427, 56 A. L. R. 317, 262 Pac. 881; *Sanderson v. Salmon River Canal Co.*, 45 Ida. 244, 263 Pac. 32; *First Nat. Bank v. Ball*, 90 Cal. App. 709, 266 Pac. 604, at 605; *Chambers v. McCollum*, 47 Ida. 74, 272 Pac. 707.)

Constitutions containing the words "foster and support," have been held to authorize such statutes in the following instances: *Kaiser v. State*, 80 Kan. 364, 102 Pac. 454, 24 L. R. A., N. S., 295; *State v. Ikey's Estate*, 84 Vt. 363, Ann. Cas. 1913A, 577, 79 Atl. 850; *State v. Kiesewetter*, 37 Ohio St. 546; *State v. Pierce County*, 132 Wash. 155, 46 A. L. R. 594, 231 Pac. 801.) The difference between "establish" and "foster," since "support" is in the Constitutions there construed and ours, does not make these au-

thorities inapplicable. The substance of the arguments presented by the respondent in his attack on the law here was presented and considered in the above cases and it is unnecessary to repeat them herein. Suffice it to say that we think the better reasoning and the weight of authority is to the effect that our Constitution does not prohibit such legislation.

Statutes of similar import have been sustained against various grounds of attack in the following cases: *Depue v. District of Columbia,* 51 App. D. C. 54, Ann. Cas. 1917E, 414; *Napa State Hospital v. Dasso,* 153 Cal. 698, 15 Ann. Cas. 910, 96 Pac. 355, 18 L. R. A., N. S., 643; *In re Hoffman,* 258 Pa. 343, 101 Atl. 1052; *City of Cleveland v. Cuyahoga County Commrs., etc.,* 19 Ohio C. C. 663; *Clay County v. Meyers,* 159 Iowa, 745, 140 N. W. 889; *Board of Chosen Freeholders, etc., v. Ritson,* 68 N. J. L. 666, 54 Atl. 839; *State v. Ikey's Estate, supra; Bon Homme County v. Berndt,* 15 S. D. 494, 90 N. W. 147; *In re Mansley's Estate,* 253 Pa. 522, 98 Atl. 702; *State v. Romme,* 93 Conn. 571, 107 Atl. 519; *State v. Heupel,* 114 Neb. 797, 48 A. L. R. 728, 210 N. W. 275.

The statute authorizes the commissioner of public welfare to collect, if the inmate has sufficient funds or property, the "actual charges and expenses" for the "care and safekeeping" of the patient, and the medical superintendent is limited in fixing the sum to be so recovered, by the above provision. There is thus a guide for, and limitation on, his acts in this regard; the delegation of this duty is not a delegation of legislative authority. (*Idaho Power & Light Co. v. Blomquist,* 26 Ida. 222, at 253, Ann. Cas. 1916E, 282, 141 Pac. 1083; *Marshall v. Department of Agriculture,* 44 Ida. 440, 258 Pac. 171; *Chambers v. McCollum, supra,* at page 82; *Guthrie County v. Conrad,* 133 Iowa, 171, 110 N. W. 454, at 455.)

Since action in court is expressly provided for, the inmate is not deprived of his property without due process of law. (*Eagleson v. Rubin,* 16 Ida. 92, 100 Pac. 765; *Speer* ·

*v. Stephenson*, 16 Ida. 707, 102 Pac. 365; *Chambers v. McCollum, supra,* at p. 85; *Porter v. City of Lewiston*, 41 Ida. 324, at 335, 238 Pac. 1014; *Stark v. McLaughlin*, 45 Ida. 112, at 133, 136 and 138, 261 Pac. 244.)

Judgment reversed and cause remanded, with instructions to overrule the demurrer, permit an answer and grant a trial if desired. No costs allowed.

Lee, C. J., and Varian and McNaughton, JJ., concur.