## IN THE SUPREME COURT OF THE STATE OF IDAHO

### Docket No. 43019

|  |  |  |
|---|---|---|
| BARRY SEARCY, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | Boise, November 2015 Term |
| | ) | |
| IDAHO STATE BOARD OF | ) | 2016 Opinion No. 81 |
| CORRECTION, IDAHO DEPARTMENT | ) | |
| OF CORRECTION, CAROLYN MELINE, | ) | Filed: July 22, 2016 |
| JIM TIBBS, JAY NIELSEN, ROBIN | ) | |
| SANDY, ANNA JANE DRESSEN, BRENT | ) | Stephen Kenyon, Clerk |
| REINKE, PAM SONNEN, TONY MEATTE, | ) | |
| SUSAN FUJINAGA, THEO LOWE, and | ) | |
| SHIRLEY AUDENS, in their official | ) | |
| capacities and as State employees, | ) | |
| | ) | |
| Defendants-Respondents, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| DOES 1 through 10, fictitiously named | ) | |
| persons, | ) | |
| | ) | |
| Defendants. | ) | |

Appeal from the District Court of the Fourth Judicial District of the State of Idaho, Ada County. Hon. Thomas F. Neville, District Judge.

The judgment of the district court is affirmed.

Barry Searcy, Boise, pro se appellant.

Brassey Crawford, PLLC, Boise, for respondents.

_____

ON THE BRIEFS

HORTON, Justice.

This is case involves a claim that prison inmates are unlawfully charged certain fees. The district court granted summary judgment, dismissing the claims. The Court of Appeals affirmed. We granted Searcy's petition for review and likewise affirm the district court's decision.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Searcy is an inmate in the custody of the Idaho Department of Correction (IDOC). On May 18, 2011, he filed a civil complaint, naming as defendants the Idaho State Board of Correction, IDOC, and various individual defendants in their official capacities (collectively "the Board"). Searcy's complaint alleged that the Board illegally charges inmates fees for: (1) commissary goods; (2) telephone calls; (3) photocopying; (4) medical service co-pays; and (5) hobby supplies.[1] The Legislature had not provided express statutory authorization for any of these fees at the time that Searcy brought this action. Instead, the fees were imposed based upon IDOC policy or Standard Operating Procedures (SOPs).

Searcy's complaint contained three counts. Count I alleged that raising revenue through the disputed fees exceeded the Board's rulemaking authority under Idaho Code section 20-212 and caused a wrongful forfeiture of property in violation of Idaho Code section 18-314. That count also alleged that the Board's action invaded the province of the Legislature in violation of "the provisions of Idaho Constitution, Article II, Section 1; Article VII, Sections 2, 5 and/or 16; Article X, Section 1." Count II alleged a violation of the Idaho Tort Claims Act. Count III alleged a civil conspiracy by the State to commit tortious acts and violate Idaho's Constitution and statutes. On October 20, 2011, Searcy moved for partial summary judgment. On March 6, 2012, the Board moved for summary judgment on all of Searcy's claims.

On June 13, 2012, the district court issued a decision denying Searcy's motion for summary judgment in part, granting the Board's motion for summary judgment in part, and setting a schedule for additional briefing. In that decision, the district court granted the Board's motion for summary judgment dismissing Counts II and III of Searcy's complaint. With regard to Count I, the district court denied Searcy's motion and granted the Board's motion, dismissing Searcy's claims regarding: (1) telephone and commissary fees, reasoning they were authorized by Idaho Code section 67-3611; (2) the hobby supply fee as it related to Searcy's claim under Article X, Section 1 and Article VII, Sections 2 and 16 of the Idaho Constitution; and (3) Searcy's forfeiture claim under Idaho Code section 18-314. This narrowed the issues in the case

---

[1] As the parties have not addressed the hobby supply fee, we will not address this claim on appeal.

to the portions of Count I dealing with Searcy's claims under Article II, Section 1 of the Idaho Constitution regarding hobby supply, medical co-pay, and photocopy fees; and (2) medical co-pay and photocopy fees under Article X, Section 1 and Article VII, Sections 2 and 16 of the Idaho Constitution.

The parties filed additional briefing and Searcy sought reconsideration of the district court's grant of partial summary judgment in the Board's favor. On May 16, 2013, the district court issued a decision denying Searcy's motion to reconsider, denying Searcy's motion for partial summary judgment, and granting the Board's motion for summary judgment. The district court took judicial notice that the Board had promulgated Idaho Administrative Procedure Act (IDAPA) rules following its June 13, 2012, decision, which addressed the hobby supply, photocopy, and medical co-pay fees. The district court reasoned that this remedial action, subjecting the rules to legislative oversight, meant the Board did not violate the separation of powers under Article II, Section 1 of the Idaho Constitution. The district court also determined that the remedial action rendered any claim that the fees should have been promulgated under Idaho Code section 20-212 moot. As to Searcy's Idaho Constitution, Article VII, Sections 2 and 16 claims, the district court determined the medical co-pay and photocopy fees were not unconstitutional taxes. On Searcy's Idaho Constitution, Article X, Section 1 claim, the district court determined that the Board's remedial action meant they did not exceed the authority granted to them under the Idaho Constitution.

Searcy appealed, and his claims "solely challenging the district court's grant of summary judgment as to Count I" were heard by the Court of Appeals. In a split decision, the Court of Appeals affirmed. Searcy petitioned for review, which this Court granted.

## II. STANDARD OF REVIEW

"When a case comes before this Court on a petition for review from a Court of Appeals decision, serious consideration is given to the views of the Court of Appeals, but this Court reviews the decision of the lower court directly." *Kelly v. State*, 149 Idaho 517, 521, 236 P.3d 1277, 1281 (2010). "When this Court reviews a district court's ruling on a motion for summary judgment, it employs the same standard properly employed by the district court when originally ruling on the motion." *Chandler v. Hayden*, 147 Idaho 765, 768, 215 P.3d 485, 488 (2009). "Summary judgment is proper when there is no genuine issue of material fact and the only remaining questions are questions of law." *Id.* We may affirm a grant of summary judgment on

3

alternative grounds that were presented to but not relied upon by the district court. *Commercial Ventures, Inc. v. Rex M. & Lynn Lea Family Trust*, 145 Idaho 208, 217–18, 177 P.3d 955, 964–65 (2008).

### III. ANALYSIS

Searcy argues that the fees are unconstitutional taxes; IDOC acted outside its constitutional authority because funds used to support the penal system can only be raised through taxation; and IDOC violated the separation of powers, in part, because it did not follow the correct rulemaking process. We address these issues in turn.

**A. The fees at issue are not unconstitutional taxes.**

The district court found that each of the disputed fees in this case were "user fees."[2] In his petition for review, Searcy contends the district court erred because the commissary, telephone, medical co-pay, and photocopy fees cannot be upheld as valid regulatory fees.

Taxation is a power that has been granted to the Legislature. Article VII, Section 2 of the Idaho Constitution provides:

> The legislature shall provide such revenue as may be needful, by levying a tax by valuation, so that every person or corporation shall pay a tax in proportion to the value of his, her, or its property, except as in this article hereinafter otherwise provided. The legislature may also impose a license tax, both upon natural persons and upon corporations, other than municipal, doing business in this state; also a per capita tax: provided, the legislature may exempt a limited amount of improvements upon land from taxation.

Additionally, the Idaho Constitution provides: "The legislature shall pass all laws necessary to carry out the provisions of this article." Idaho Const. art. VII, § 16.

Because the Board concedes it does not have the power to tax, the issue on appeal is whether the fees are valid fees or unconstitutional taxes. We have explained the distinction as follows: "In a general sense a fee is a charge for a direct public service rendered to the particular consumer, while a tax is a forced contribution by the public at large to meet public needs." *Brewster v. City of Pocatello*, 115 Idaho 502, 505, 768 P.2d 765, 768 (1988); *see also Potts Const. Co. v. N. Kootenai Water Dist.*, 141 Idaho 678, 681, 116 P.3d 8, 11 (2005). "[T]axes are solely for the purpose of raising revenue" whereas fees are charged for services that are rendered. *BHA Investments, Inc. v. State*, 138 Idaho 348, 353, 63 P.3d 474, 479 (2003). The amount of a

---

[2] It is unclear whether the district court meant this finding to apply to all five of the disputed fee categories or just the medical co-pay and photocopy fees. Before the district court, the Board claimed that all the challenged fees were user fees.

fee "must bear a reasonable relation to the thing to be accomplished." *Foster's, Inc., v. Boise City*, 63 Idaho 201, 219, 118 P.2d 721, 728 (1941).

IDOC collects fees on commissary services under SOP 114.03.03.014 and Policy 406. These fees are up to twenty-five percent of the price of commissary goods. Due to the elective nature of buying commissary goods, commissary fees are permissible because they are a charge for a direct service rendered to the particular inmate. The fee on commissary goods cannot be said to be a tax because it is not a forced contribution by inmates at large to meet general inmate needs. Commissary fees are reasonably assessed to offset the cost of prison commissary programs. Thus, they are not an unconstitutional tax.

Under SOP 114.03.03.014 and Policy 503, IDOC assesses fees for telephone time purchased by inmates and their family, friends, and associates. IDOC has a contract with a private telephone service provider and charges inmates $3.80 for a collect call, $3.60 for a pre-paid collect call, and $3.40 for a debit call. Searcy alleges IDOC receives $1.75 per collect call, $2.00 per pre-paid collect call, and $2.25 per debit call. Telephone calls are not involuntary, as inmates can choose other forms of communication, such as letters or personal visits. The fees bear a direct relation to the service provided as they are charged on a per call basis. The record is unclear whether the primary purpose of the telephone fees is to generate revenue or compensate IDOC for telephone expenses. However, the fact that the telephone fees are voluntary and only charged to those who place phone calls makes them permissible user fees rather than an unconstitutional tax.

Under SOP 405.02.01.001, IDOC charges inmates a fee of $0.10 per page for photocopies for legal matters but does not charge indigent inmates for photocopies. Because the photocopy fee is proportional to the number of copies made, it bears a direct relation to the services provided. Thus, it is not an unconstitutional tax.

Pursuant to Policy 411 and SOP 411.06.03.001, inmates are charged medical and pharmacy co-pay fees unless "the offender does not have the resources to pay for such services." Inmate-initiated medical visits are assessed a $5 medical co-pay; Community Work Center (CWC) work-release offenders have a $10 medical co-pay; there is a $3 co-pay for "course/treatment or per prescription" for over-the-counter and prescription medications; and CWC work-release offenders are charged a $5 pharmacy co-pay. SOP 411.06.03.001 provides that medical co-pay fees are used to offset IDOC medical expenses. As is the case with the other

challenged fees, medical co-pays are charged in direct relation to the use of particular medical and pharmacy services. Thus, they are not unconstitutional taxes.

Searcy, however, argues commissary and telephone fees are unconstitutional because they are commingled with other funds in the Inmate Management Fund (IMF) and may be spent on other programs. He likewise argues photocopy and medical co-pay fees are commingled in the Miscellaneous Revenue Fund (MRF) and IMF and not necessarily used for photocopy and medical expenses. He cites *Idaho Bldg. Contractors Ass'n v. City of Coeur d'Alene*, 126 Idaho 740, 890 P.2d 326 (1995), in support of this argument. There, the City imposed a "capital improvements" charge on every building permit, contending that new buildings created "an increase in the demand on public facilities such as police, fire, and libraries." *Id*. at 743, 890 P.2d at 329. We found the charge to be impermissible because the person obtaining the building permit would not necessarily increase demand for public facilities. *Id.* The fees challenged in this case are not similar to the capital improvement charges we found to be invalid. An inmate who purchases items and services subject to the disputed fees necessarily uses those items and services and justifiably can be charged for them. The fact that fee revenue is commingled with other money does not, by itself, render the charges unconstitutional.

Searcy also argues the commissary, telephone and photocopy fees cannot be rationally related to the cost of providing those services because the Board has not provided any evidence as to the actual cost of those services. Searcy argues summary judgment was erroneous because the relative proportion of fees to the actual costs of services is a material issue that has not been resolved. Indeed, this Court has held that the fee must bear "some relation" or a "reasonable relation" to the value of services rendered. *BHA Investments, Inc.*, 138 Idaho at 353, 63 P.3d at 479; *Foster's, Inc.*, 63 Idaho at 217, 118 P.2d at 728. Searcy is correct that the record does not reveal the precise cost of providing commissary, telephone, and photocopy services. However, the law simply requires that the amount of the fee must bear "some relation" or a "reasonable relation" to the value of services rendered. We hold that the amount of the commissary fee (up to 25 percent), fees of $2.25 or less for telephone calls, and $0.10 per page charge for photocopies bear a reasonable relation to the value of those services.

For these reasons, the district court correctly determined that the fees at issue are not unconstitutional taxes.

6

**B. There is no requirement that funds used to support IDOC operations be provided by tax revenue.**

Searcy contends that the challenged fees violate Idaho Constitution art. X, § 1 because IDOC's actions have infringed upon the powers of the Legislature. This section of the Idaho Constitution provides:

> Educational, reformatory, and penal institutions, and those for the benefit of the insane, blind, deaf and dumb, and such other institutions as the public good may require, shall be established and supported by the state in such manner as may be prescribed by law.

Idaho Const. art. X, § 1. "Section 1, article 10, is a direction to establish the institution, and authorizes state support, *but does not make such support exclusive* nor prescribe how or from what sources the necessary funds shall be obtained, but leaves that to the legislature." *State v. Johnson*, 50 Idaho 363, 368, 296 P. 588, 589 (1931). "The policy is that there shall be state institutions, the manner of establishment and support thereof by the state to be as prescribed by the legislature, and state support may come from many sources." *Id.*

The Board has not violated Idaho Constitution Article X, Section 1. Commissary and telephone fee funds are placed in the IMF, which is deposited with the state treasurer and appropriated back to IDOC each year as part of the budget process. Medical co-pay and photocopy fees go into the MRF, which is likewise deposited with the state treasurer before being appropriated back to IDOC. Because it is the Legislature which ultimately provides IDOC funding through the budget and appropriation process, there is no violation of Article X, § 1.

**C. The Board did not exceed the scope of its authority.**

Searcy asserts that the Board's actions exceeded its authority. The district court concluded that the Board had "broad authority to set the State's policy regarding the control, direction and management of the penitentiaries of the state pursuant to Idaho Constitution, Article X, § 5" and that the Board had "taken appropriate remedial action to adopt IDAPA Rules concerning the department's fee structure with legislative oversight as required by I.C. § 20-212." These conclusions are addressed below.

**1. General scope of authority**

The district court concluded that the Board had "broad authority to set the State's policy regarding the control, direction and management of the penitentiaries of the state pursuant to Idaho Constitution, Article X, § 5." Searcy contends the Board exceeded its authority since there is no explicit statutory authority for it to impose the challenged fees.

7

Because Searcy's arguments are based upon separation of powers principles, it may be helpful to provide a brief overview of the Board's constitutional role. Article II of Idaho's Constitution creates the three distinct branches of government. Idaho Const. art. II, § 1. This case concerns the constitutional powers of an executive agency, the Board. Our Constitution mandated the legislative creation of the Board:

> The state legislature shall establish a nonpartisan board to be known as the state board of correction . . . . This board shall have the control, direction and management of the penitentiaries of the state, their employees and properties, and of adult probation and parole, with such compensation, powers, and duties as may be prescribed by law.

Idaho Const. art. X, § 5.[3]

"Since the Legislature cannot possibly foresee all the practical difficulties that state agencies will encounter while carrying out their statutory functions, 'administrative agencies have the implied or incidental powers that are reasonably necessary in order to carry out the powers expressly granted.' " *Vickers v. Lowe*, 150 Idaho 439, 442, 247 P.3d 666, 669 (2011) (quoting 2 Am.Jur.2d *Administrative Law* § 57 (2004)). The "authority to make rules and regulations to carry out an express legislative purpose or to effect the operation and enforcement of the same is not exclusively a legislative power, but is administrative in its nature." *State v. Heitz*, 72 Idaho 107, 112, 238 P.2d 439, 442 (1951).

The Legislature has granted the Board broad powers:

> The state board of correction shall have the control, direction and management of such correctional facilities as may be acquired for use by the state board of correction and all property owned or used in connection therewith, and shall provide for the care, maintenance and employment of all prisoners now or hereinafter committed to its custody.

I.C. § 20-209(1). This Court has recognized that "[t]he supervision and maintenance of prisons in the State of Idaho is a function of the executive branch of the government; the State Board of Correction is the body which has been expressly granted the control, direction and management of the state penitentiary." *State v. Reese*, 98 Idaho 347, 348, 563 P.2d 405, 406 (1977). Idaho Code sections 20-212 and 20-244 empower the Board to adopt rules and regulations for the management of this State's prisons.

---

[3] In November of 2012, after Searcy filed this action, Idaho's electorate amended this section of the Constitution with the addition of a single word. The amendment clarified the Board's responsibility for adult *felony* probation. This amendment is irrelevant to our analysis.

Other courts have recognized that prison administrators are extended deference when imposing fees that have not been specifically authorized by statute. *See, e.g.*, *Tillman v. Lebanon Cnty. Corr. Facility*, 221 F.3d 410, 423 (3d Cir. 2000) (holding the enactment of a Cost Recovery Program not explicitly provided for by statute was within a county prison board's exclusive authority regarding the government and management of the facility); *Olmos v. Ryan*, No. CV 10-2564-PHX-GMS, 2013 WL 4602517, at *6 (D. Ariz. Aug. 29, 2013) (holding that due to "the nature of corrections . . . rule-making power should be liberally construed" to allow for postage, photocopy, telephone, and legal supply fees in the absence of express statutory authorization); *Matter of Allah v. Coughlin*, 190 A.D.2d 233, 237 (1993) (determining a $25 high school equivalency examination fee "falls within the Commissioner's broad grant of authority to operate the prison system, including fiscal management").

The constitutional and statutory grants of authority afford IDOC and the Board wide-ranging authority over the management and operation of Idaho's prisons. *See* Idaho Const. art. X, § 5; I.C. §§ 20-201A, 20-209, 20-212, 20-244. The Board did not violate the separation of powers by enacting the SOPs and policies that resulted in the fees that are the subject of this appeal.[4]

### 2. Scope of rulemaking authority

The district court concluded that it did not need to determine if the Board exceeded the scope of its rulemaking authority because the Board had "taken appropriate remedial action to adopt IDAPA Rules concerning the department's fee structure with legislative oversight as required by I.C. § 20-212." On review, the parties argue whether the rulemaking requirements of Idaho Code section 20-212 apply to the disputed fees.

This Court's approach to statutory interpretation is as follows:

> The objective of statutory interpretation is to give effect to legislative intent. Such intent should be derived from a reading of the whole act at issue. Statutory interpretation begins with the literal words of the statute, and this language should be given its plain, obvious, and rational meaning. If the statutory language is unambiguous, the clearly expressed intent of the legislative body must be given effect, and there is no occasion for a court to consider rules of statutory construction. This is because the asserted purpose for enacting the legislation cannot modify its plain meaning.

---

[4] Searcy contends that the district court erred in applying Idaho Code section 67-3611 to the commissary and telephone fees. Because the Board's authority to impose the challenged fees is incidental and reasonably necessary to carry out its duties to control and manage the state penitentiary system, we do not decide whether Idaho Code section 67-3611 is applicable.

*Idaho Youth Ranch, Inc. v. Ada Cnty. Bd. of Equalization*, 157 Idaho 180, 184–85, 335 P.3d 25, 29–30 (2014) (citations, alterations, and quotations omitted). "If the language of a statute is capable of more than one reasonable construction it is ambiguous." *State v. Doe*, 147 Idaho 326, 328, 208 P.3d 730, 732 (2009). "When a statute is ambiguous, 'it must be construed to mean what the legislature intended it to mean. To determine that intent, we examine not only the literal words of the statute, but also the reasonableness of proposed constructions, the public policy behind the statute, and its legislative history.' " *Id.* (quoting *Hayden Lake Fire Protection Dist. v. Alcorn*, 141 Idaho 388, 398–99, 111 P.3d 73, 83–84 (2005)).

The statute at the center of the parties' disagreement, Idaho Code section 20-212, provides requirements that the Board must follow when enacting rules. The rulemaking process applicable to the Board is rather summary compared with the typical IDAPA rulemaking process. *Compare* I.C. § 20-212 *with* I.C. §§ 67-5201 to 5292. When Searcy initiated this suit, the Board had not followed the rulemaking requirements of Idaho Code section 20-212 when creating the challenged fees. Idaho Code section 20-212 provides in relevant part:

> (1) The state board of correction *shall make all necessary rules to carry out the provisions of this chapter* not inconsistent with express statutes or the state constitution and to carry out those duties assigned to the department of correction pursuant to the provisions of chapter 8, title 20, Idaho Code. . . . All rules of the board shall be subject to review of the legislature pursuant to sections 67-454, 67-5291 and 67-5292, Idaho Code, but no other provisions of chapter 52, title 67, Idaho Code, shall apply to the board, except as otherwise specifically provided by statute. When making rules required by this section, the board or the department shall submit the rules to the office of the state administrative rules coordinator, in a format suitable to the office of the state administrative rules coordinator as provided in section 67-5202, Idaho Code, and the board or department shall pay all the fees provided in section 67-5205, Idaho Code. The office of the state administrative rules coordinator is authorized and shall publish the board or department's rules in the administrative bulletin. Additionally, whenever the board or department desires to amend, modify or repeal any of its rules, it shall follow the procedure provided in this section. All rules, or the amendment or repeal of rules shall be effective thirty (30) days after the date of publication by the office of the administrative rules coordinator. If the board determines that the rules need to be effective at a sooner date, they shall issue a proclamation indicating that the public health, safety and welfare is in jeopardy and, if the governor agrees, the rules shall be effective upon the governor signing the proclamation.
>
> (2) "Rule" as used in this section means the whole or a part of the board of correction or department of correction's statement of general applicability that has

been promulgated in compliance with the provisions of this section and that implements, interprets or prescribes:

(a) Law or policy; or

(b) The procedure or practice requirements of the board or department. The term includes the amendment, repeal, or suspension of an existing rule, *but does not include:*

*(i) Statements concerning only the internal management or internal personnel policies of an agency and not affecting private rights of the public or procedures available to the public; or*

(ii) Declaratory rulings issued pursuant to statute or the board's rules; or

(iii) Intra-department memoranda; or

(iv) Any written statements given by the department or board which pertain to an interpretation of a rule or to the documentation of compliance with a rule.

We find that there is ambiguity as to whether Idaho Code section 20-212's legislative review requirement applies to the challenged fees. This is because Idaho Code section 20-244 provides:

The state board of correction shall make and adopt such rules and regulations for the government and discipline of the correctional facility as they may consider expedient, and from time to time, change and amend the same as circumstances may require. A printed copy of the rules and regulations shall be furnished to every officer and guard at the time he is appointed, and so much thereof as relates to the duties and obligations of the convicted persons shall be given to the convicted person upon reception at the state's correctional institutions.

This statute does not expressly require that such rules and regulations be subject to legislative review. However, Idaho Code section 20-212 can be interpreted as applying to the rules and regulations promulgated under Idaho Code section 20-244. This is because Idaho Code section 20-212(1) provides that the Board "shall make all rules necessary to carry out the provisions of this chapter" and Idaho Code section 20-244 is part of the same chapter and uses the term "rules," which is defined in Idaho Code section 20-212(2).

We hold that the challenged fees are not governed by the rulemaking process prescribed in Idaho Code section 20-212. "[S]tatutes relating to the same subject, although in apparent conflict, are construed to be in harmony if reasonably possible." *Cox v. Mueller*, 125 Idaho 734, 736, 874 P.2d 545, 547 (1994). Here, construing the two statutes as covering distinct categories of rules creates a harmonious, non-redundant result. If decisions regarding the internal

11

governance and discipline of correctional facilities were covered by Idaho Code section 20-212, Idaho Code section 20-244 would be rendered irrelevant.

Legislative history supports this conclusion. Idaho Code section 20-244 was not originally subject to the disputed rulemaking requirements and the Legislature never amended it to be subject to those requirements. Idaho Code section 20-244 was enacted and amended in 1947 and 1984. 1947 Idaho Sess. L. ch. 53, § 44, p. 70; 1984 Idaho Sess. L. ch. 178, § 1, p. 425. From its enactment to the present, IDAPA has exempted the Board, along with the state militia from its coverage. 1965 Idaho Sess. L. ch. 273, § 1, p. 702; I.C. § 67-5201(2). Idaho Code section 20-212 was amended to apply rulemaking requirements to the Board in 1999.[5] 1999 Idaho Sess. L. ch. 311, § 3, p. 775–77. "[I]t is axiomatic that this Court must assume that whenever the legislature enacts a provision it has in mind previous statutes relating to the same subject matter. In the absence of any express repeal or amendment, the new provision is presumed in accord with the legislative policy embodied in those prior statutes." *Cox*, 125 Idaho at 736, 874 P.2d at 547 (citation omitted). If the Legislature intended actions covered by Idaho Code section 20-244 to be subject to the rulemaking requirements added to Idaho Code section 20-212 in 1999, it could have deleted Idaho Code section 20-244 or amended it. It did not.

The language of Idaho Code section 20-244 reflects a legislative desire to create a flexible standard for the Board that is inconsistent with the somewhat more rigid requirements of Idaho Code section 20-212. The statute allows for "*expedient*" rule changes that can be changed "from *time to time . . . as circumstances may require*." I.C. § 20-244. This indicates the Legislature meant to give the Board flexibility in carrying out its difficult responsibilities by exempting internal rules from the rulemaking requirements of Idaho Code section 20-212. This is consistent with an evident legislative policy of affording the Board substantial discretion in carrying out its functions. *See, e.g.*, I.C. § 67-5201(2) (exempting the Board and the state militia

---

[5] The statement of purpose enacted with this legislation provided:

> Also, the Department of Correction is the only executive branch agency that is not required to follow the Administrative Procedures Act (APA) when adopting procedural rules. . . . *This bill would give the Department the same protection for policy development and rule making that other state departments have by bringing their rule making under legislative purview.* In order to exclude inmate complaints and other sensitive issues, this bill requires that procedural rules be brought before the germane committees of the Legislature for review and approval, like other state agencies, but exempts them from the other provisions of Chapter 52.

1999 Idaho Laws Ch. 311 (S.B. 1110). This statement of purpose indicates that by enacting Idaho Code section 20-212, the Legislature intended to protect the Department of Correction's rulemaking authority, not diminish it.

from IDAPA's coverage); *compare* I.C. § 20-212 *with* I.C. § 67-5201 to 5292 (the Board's rulemaking requirements are rather summary compared to IDAPA).

The fact that rules promulgated under authority of Idaho Code section 20-244 "shall be furnished to every officer and guard at the time he is appointed" indicates that such rules are internal to correctional facilities and not applicable to the public at large.

When we consider this history, we conclude that it was the Legislature's intent that Idaho Code section 20-244 should operate independently of Idaho Code section 20-212 and that the Legislature did not intend to make every rule the Board adopts subject to Idaho Code section 20-212. Thus, because the challenged fees deal with the internal operation of the prison system, we hold that the Board acted within the scope of its rulemaking authority in adopting the subject fees under the authority afforded it under Idaho Code section 20-244.

## IV. CONCLUSION

We affirm the district court's grant of summary judgment, dismissing Searcy's claims, and award costs on appeal to the Board.

Chief Justice J. JONES and Justices EISMANN, BURDICK and W. JONES, **CONCUR**.