# IN THE COURT OF APPEALS OF THE STATE OF IDAHO

## Docket No. 41216

BARRY SEARCY, )
                              )     **2015 Opinion No. 3**
     Plaintiff-Appellant, )
                              )     **Filed: January 14, 2015**
v. )
                              )     **Stephen W. Kenyon, Clerk**
IDAHO STATE BOARD OF )
CORRECTION, IDAHO DEPARTMENT )
OF CORRECTION, CAROLYN MELINE, )
JIM TIBBS, JAY NIELSEN, ROBIN )
SANDY, ANNA JANE DRESSEN, BRENT )
REINKE, PAM SONNEN, TONY MEATTE, )
SUSAN FUJINAGA, THEO LOWE and )
SHIRLEY AUDENS, in their official )
capacities and as State employees, )
                              )
     Defendants-Respondents, )
                              )
and )
                              )
DOES 1 through 10, fictitiously named )
persons, )
                              )
     Defendants. )
                              )

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Ada County. Hon. Thomas F. Neville, District Judge.

Judgment in favor of defendants in action challenging assessment of fees by correctional institution, <u>affirmed</u>.

Barry Searcy, Boise, pro se appellant.

Andrew C. Brassey of Brassey Crawford, PLLC, Boise, for respondents.

_____

MELANSON, Chief Judge

     Barry Searcy appeals from the district court's order granting summary judgment in favor of Idaho State Board of Correction, et al. in an action challenging the assessment of fees by correctional institutions. For the reasons set forth below, we affirm.

1

## FACTS AND PROCEDURE

Searcy is an inmate at the Idaho State Correctional Institution in Boise. On May 18, 2011, Searcy filed a civil complaint naming as defendants the Idaho State Board of Correction (the Board) and the Idaho Department of Correction (IDOC), along with individual defendants Carolyn Meline; Jim Tibbs; Jay Nielsen; Robin Sandy; Anna Jane Dressen; Brent Reinke; Pam Sonnen; Tony Meatte; Susan Fujinaga; Theo Lowe; and Shirley Audens in their official capacities as prison officials (all named defendants collectively referred to as respondents).

The IDOC charges the following fees, commissions, co-pays, and surcharges (collectively fees) to inmates who use the applicable programs or services: (1) a 5 percent surcharge on hobby craft supply purchases; (2) a commission on the sale of commissary goods; (3) a photocopying service fee; (4) medical services co-pay fees; and (5) commissions from telephone calls made by IDOC inmates and their families, friends, and associates. The Idaho legislature has not enacted any statute which identifies these precise fees and provides express authority to the IDOC to impose these fees. These fees are the subject of Searcy's claims.

Each of the fees imposed by the IDOC is the subject of IDOC policies or Standard Operating Procedures (SOPs) and operates in the following manner. The IDOC collects commissions on the use of telephone services and commissary goods and deposits those commissions into the Inmate Management Fund (IMF) which, in turn, is deposited into the state treasury pursuant to SOP 114.03.03.014. The legislature then appropriates IMF funds back to the IDOC each year as part of the budget process.

Pursuant to SOP 405.02.01.001 (Access to Courts), inmates are charged a fee of $0.10 per page for photocopies. The IDOC does not charge indigent inmates the fee for photocopying. All photocopying may be subject to page limits in accordance with court rules.

It is the policy of the Board that the IDOC and its contractors charge offenders incarcerated at IDOC facilities a co-pay for medical and pharmacy services, but do not deny access to medical, dental, and mental health services when the offender does not have the resources to pay for such services. *See* IDOC Policy 411. In addition, offender-initiated medical visits are assessed a $5 medical co-pay fee. *See* SOP 411.06.03.01 (Medical Co-Pay). Community Work Center (CWC) work-release offenders are assessed a $10 medical co-pay fee. The IDOC also assesses a $3 pharmacy service medical co-pay fee for dispensing either over-

the-counter or prescription medications per treatment or per prescription. Employed CWC work-release offenders are assessed a $5 pharmacy co-pay fee. Funds generated from the medical co-pay fees are used by the IDOC to offset general fund medical expenses.

It is the policy of the IDOC that offenders have opportunities to pursue hobby craft activities. *See* IDOC Policy 608 (Hobby Craft Activities). Policy 608 further directs that an SOP be implemented requiring a 5 percent surcharge for hobby craft materials to defray the costs of the hobby craft program. The price of hobby craft materials includes the purchase price, shipping, sales tax, and a 5 percent surcharge. SOP 608.02.00.001. Further, this SOP states that the surcharge is used to purchase hobby craft supplies and items that are used by participating offenders, such as hobby shop tools.

Count I of Searcy's complaint alleged that the raising of revenue for use by the IDOC, through the above-described fees, exceeds and violates the scope of rulemaking authority granted under I.C. § 20-212 and causes a forfeiture of his property in violation of I.C. § 18-314. Searcy's complaint also alleged that the raising of revenue invades the province of the legislature in violation of the provisions of Article II, Section 1; Article VII, Sections 2, 5, and 16; and Article X, Section 1 of the Idaho Constitution. Count II alleged negligence under the Idaho Tort Claims Act and conversion. Count III alleged civil conspiracy. Searcy moved for partial summary judgment as to liability on Count I. The respondents answered and filed a cross-motion for summary judgment encompassing all of Searcy's claims.

On June 13, 2012, the district court entered an order denying in part Searcy's partial motion for summary judgment, granting in part the respondents' motion for summary judgment, and setting a schedule for further briefing. The district court concluded that I.C. § 67-3611 provided express statutory authorization for state penal institutions to impose the telephone and commissary fees.

The parties filed additional memoranda and Searcy filed a motion for reconsideration. On May 16, 2013, the district court entered an order denying Searcy's motion to reconsider, denying Searcy's motion for partial summary judgment, and granting the respondents' motion for summary judgment on all counts. In this order, the district court took judicial notice that since the June 13, 2012, order, the Idaho Administrative Procedures Act (IDAPA) rules were promulgated setting the IDOC fee structure addressing the hobby craft surcharge, photocopy fees, and medical co-pay fees. Because of this remedial action, which was subject to legislative

3

oversight through the IDAPA process, the district court concluded that those fees were not a violation of the separation of powers between the executive and legislative branches of Idaho and any claim that the fees in question should have been promulgated pursuant to I.C. § 20-212 was moot. The district court also concluded that the medical co-pay fees and photocopy fees were user fees and not taxes, and therefore, Searcy's claims pursuant to Article VII, Sections 2 and 16 of the Idaho Constitution were dismissed. Searcy appeals, solely challenging the district court's grant of summary judgment as to Count I.[1]

## II.

## STANDARD OF REVIEW

Summary judgment under I.R.C.P. 56(c) is proper only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. On appeal, we exercise free review in determining whether a genuine issue of material fact exists and whether the moving party is entitled to judgment as a matter of law. *Edwards v. Conchemco, Inc.*, 111 Idaho 851, 852, 727 P.2d 1279, 1280 (Ct. App. 1986). When assessing a motion for summary judgment, all controverted facts are to be liberally construed in favor of the nonmoving party. Furthermore, the trial court must draw all reasonable inferences in favor of the party resisting the motion. *G & M Farms v. Funk Irrigation Co.*, 119 Idaho 514, 517, 808 P.2d 851, 854 (1991); *Sanders v. Kuna Joint Sch. Dist.*, 125 Idaho 872, 874, 876 P.2d 154, 156 (Ct. App. 1994).

The party moving for summary judgment initially carries the burden to establish that there is no genuine issue of material fact and that he or she is entitled to judgment as a matter of law. *Eliopulos v. Knox*, 123 Idaho 400, 404, 848 P.2d 984, 988 (Ct. App. 1992). The burden may be met by establishing the absence of evidence on an element that the nonmoving party will be required to prove at trial. *Dunnick v. Elder*, 126 Idaho 308, 311, 882 P.2d 475, 478 (Ct. App. 1994). Such an absence of evidence may be established either by an affirmative showing with the moving party's own evidence or by a review of all the nonmoving party's evidence and the contention that such proof of an element is lacking. *Heath v. Honker's Mini-Mart, Inc.*, 134

---

[1] Searcy abandoned his claims pursuant to Article VII, Section 5 of the Idaho Constitution and I.C. § 18-314. Further, while Searcy purports to abandon his claims pursuant to Article VII, Sections 2 and 16 of the Idaho Constitution, and the hobby craft fees, these claims are subsumed within Searcy's broader argument that the IDOC violated the separation of powers between the executive and legislative branches of Idaho government pursuant to Article II, Section 1 of the Idaho Constitution. Thus, they will be addressed as pertinent herein.

4

Idaho 711, 712, 8 P.3d 1254, 1255 (Ct. App. 2000). Once such an absence of evidence has been established, the burden then shifts to the party opposing the motion to show, via further depositions, discovery responses or affidavits, that there is indeed a genuine issue for trial or to offer a valid justification for the failure to do so under I.R.C.P. 56(f). *Sanders*, 125 Idaho at 874, 876 P.2d at 156.

The United States Supreme Court, in interpreting Federal Rule of Civil Procedure 56(c), which is identical in all relevant aspects to I.R.C.P. 56(c), stated:

> In our view, the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is "entitled to judgment as a matter of law" because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986) (citations omitted). The language and reasoning of *Celotex* has been adopted in Idaho. *Dunnick*, 126 Idaho at 312, 882 P.2d at 479.

## III.

## ANALYSIS

Searcy asserts three claims of error: (1) the district court erred in concluding that the revenue raised by the IDOC through medical co-pay and photocopy fees does not violate Article II, Section 1 of the Idaho Constitution or I.C. § 20-212 by ruling that subsequent IDAPA rules promulgated by the IDOC were sufficient remedial action; (2) the district court erred in concluding that revenue raised by the IDOC through medical co-pay and photocopy fees does not violate Article X, Section 1 of the Idaho Constitution by ruling that subsequent IDAPA rules promulgated by the IDOC were sufficient remedial action; and (3) the district court erred in concluding that the fees charged for telephone time and commissary goods are funds arising from the sale of goods or services under I.C. § 67-3611. The respondents contend this Court should affirm on alternate grounds--namely, because the IDOC did not invade the province of

5

the legislature, it acted within its constitutional and statutory authority, and summary judgment was appropriate.[2]

## A.    Separation of Powers

The supervision and maintenance of prisons in Idaho is a function of the executive branch of the government; the Board is the body which has been expressly granted the control, direction, and management of the state penitentiary. IDAHO CONST. art. X, § 5; I.C. § 20-209; *Burge v. State*, 90 Idaho 473, 476, 413 P.2d 451, 452 (1966); *Mahaffey v. State*, 87 Idaho 228, 232, 392 P.2d 279, 281 (1964). Article X, Section 5 of the Idaho Constitution mandates that the Idaho legislature create the Board:

> The state legislature shall establish a nonpartisan board to be known as the state board of correction, and to consist of three members appointed by the governor, one member for two years, one member for four years, and one member for six years. After the appointment of the first board the term of each member appointed shall be six years. This board shall have the control, direction and management of the penitentiaries of the state, their employees and properties, and of adult felony probation and parole, with such compensation, powers, and duties as may be prescribed by law.

In accordance with this provision, the legislature enacted Chapter 2, Title 20, creating the Board to control, direct, and manage Idaho's correctional facilities and to provide for the care and maintenance of all prisoners in its custody. I.C. §§ 20-201A, 20-209(1).

The Board's prescribed powers include, but are not limited to, the power to make all necessary rules to carry out its duties, I.C. § 20-212; the power to appoint a director of correction, who acts as chief administrative officer for the Board and business manager of the penitentiary and who assumes all the authority, powers, functions, and duties as may be delegated to him or her by the Board, I.C. § 20-217A; and the power to make and adopt such rules and regulations for the government and discipline of the correctional facility as it may consider expedient, I.C. § 20-244. Thus, the supervision and maintenance of Idaho prisons is a function of the executive branch, and the Board is the body that has been expressly granted such control. IDAHO CONST. art. X, § 5; I.C. § 20-209; *Burge*, 90 Idaho at 476, 413 P.2d at 452.

Searcy argues that, despite this grant of power to the Board, the policies and SOPs put into place by the IDOC, which impose the subject fees, are a violation of the separation of

---

[2]    This Court can affirm a grant of summary judgment on grounds raised below, but not addressed by the district court. *Commercial Ventures, Inc. v. Rex M. & Lynn Lea Family Trust*, 145 Idaho 208, 218, 177 P.3d 955, 965 (2008).

powers between the executive and legislative branches pursuant to Article II, Section 1 of the Idaho Constitution. Article II is entitled Distribution of Powers and provides as follows:

> The powers of the government of this state are divided into three distinct departments, the legislative, executive and judicial; and no person or collection of persons charged with the exercise of powers properly belonging to one of these departments shall exercise any powers properly belonging to either of the others, except as in this constitution expressly directed or permitted.

IDAHO CONST. art. II, § 1. Searcy's claim hinges upon this provision, as he contends the subject fees violate the separation of powers doctrine because the manner in which the IDOC imposed the fees encroached upon the legislature's power to raise revenue, support the state's penal institutions, and make law. For the reasons set forth below, we disagree.

### 1.    Subject fees

The Idaho Constitution expressly grants the legislature the power to raise revenue through taxation. Specifically, Article VII, Section 2 provides:

> The legislature shall provide such revenue as may be needful, by levying a tax by valuation, so that every person or corporation shall pay a tax in proportion to the value of his, her, or its property, except as in this article hereinafter otherwise provided. The legislature may also impose a license tax, both upon natural persons and upon corporations, other than municipal, doing business in this state; also a per capita tax: provided, the legislature may exempt a limited amount of improvements upon land from taxation.

Article VII, Section 16 further provides that the "legislature shall pass all laws necessary to carry out the provisions of this article."

The IDOC concedes that the Board does not have the authority to levy taxes. Thus, the pivotal issue is whether the subject fees are fees or, rather, unconstitutional taxes. Generally, a fee is a charge for a direct public service rendered to the particular consumer, while a tax is a forced contribution by the public at-large to meet public needs. *Potts Constr. Co. v. N. Kootenai Water Dist.*, 141 Idaho 678, 681-82, 116 P.3d 8, 11-12 (2005); *Brewster v. City of Pocatello*, 115 Idaho 502, 505, 768 P.2d 765, 768 (1988). A fee's purpose is regulation, while taxes are primarily revenue raising measures. *BHA Invs., Inc. v. State*, 138 Idaho 348, 352-53, 63 P.3d 474, 478-79 (2003).

Searcy contends the fees at issue cannot be upheld as valid regulatory fees, but this argument misses the mark. The district court appropriately characterized the fees in this case as "user fees." Regulatory fees are fees assessed as part of government regulation of private conduct. 16 MCQUILLIN MUN. CORP. § 44:24 (3d ed. 2005). Idaho case law suggests that user

7

fees, even without an overt function to regulate private conduct, fall within the category of permissible regulatory fees. *See generally Potts Constr. Co.*, 141 Idaho at 681-82, 116 P.3d at 11-12. As a subset of regulatory fees, a user fee is "a charge designed as compensation for Government-supplied services, facilities, or benefits." *United States v. U.S. Shoe Corp.*, 523 U.S. 360, 363 (1998). As one authoritative treatise has stated, in order to qualify as a valid user fee, there are three criteria to consider:

> First, the fee must be charged in exchange for a particular government service which benefits the party paying the fee in a manner not shared by other members of society. Secondly, it must be paid by choice, in that the party paying the fee has the option of not utilizing the government service and thereby avoiding the charge. Finally, the charges collected must be to compensate the governmental entity providing the services for its expenses and not to raise revenue.

16 MCQUILLIN MUN. CORP. § 44:24 (footnotes omitted). It appears, from the language of the treatise quoted, all three criteria must be met in order for a charge to qualify as a user fee. However, the case law in Idaho does not follow this rigid, three-part test. We agree that the three factors listed accurately summarize the relevant factors to be considered. However, instead of applying the factors as absolute requirements, Idaho courts have used the factors as part of a balancing test to determine whether a charge functions as a user fee or a tax. *See Idaho Bldg. Contractors Ass'n v. City of Coeur d'Alene*, 126 Idaho 740, 744, 890 P.2d 326, 330 (1995) (holding that taxes serve the purpose of providing funding for public services at large, whereas a fee serves the purpose of covering the cost of the particular service provided by the state to the individual); *Loomis v. City of Hailey*, 119 Idaho 434, 438, 807 P.2d 1272, 1276 (1991) (explaining if charges or fees are imposed "primarily" for the purpose of raising revenue, they are, in essence, taxes). The question here is whether, weighing each of the three factors, the subject fees individually function as a user fee or a tax.

The price of hobby craft supplies purchased by inmates includes a 5 percent surcharge. The IDOC also retains a commission of up to 25 percent of the price of commissary goods sold to inmates. The fees are directly related to the purchase of hobby craft supplies and commissary goods. Thus, the fees are paid only by inmates purchasing the goods or supplies and are not paid by other inmates. In addition, an inmate paying the fees has the option of not purchasing hobby craft supplies or commissary goods. Finally, the record indicates that the amount of the fees offsets the expenses associated with providing the commissary and hobby craft services to

inmates, rather than raising general revenue for the IDOC.  Weighing the relevant factors, we hold that the hobby craft surcharge and commissary commission are user fees, rather than taxes.

Inmates are charged a fee of $0.10 per page for photocopy services.  The fee is paid only by inmates utilizing photocopying services provided by the IDOC and are not paid by other inmates.[3]  In addition, based upon its amount, the purpose of the photocopying fee appears to be to defray the costs associated with offering the photocopying services, rather than raising revenue.  The question with regard to the photocopying fee is whether inmates can avoid the fee by choosing not to utilize the photocopying services.  Inmates using the photocopying services generally do so in pursuit of a legal claim.  The use of photocopying services to pursue a legal claim does not, at first look, appear to be a completely voluntary choice.  However, the decision to seek or forego legal redress or defend against the claims of another is an individual decision, not societal.  While the attendant circumstances may be compelling in the call for action, the associated costs are no more or less voluntary for members of the general public or inmates.  Nonetheless, the fee for using photocopying services is not easily or conveniently avoided, particularly where court rules require submission of duplicates of documents, rather than handwritten copies of the document.  This weighs in favor of it not being a user fee.  However, the fee's quid pro quo nature and purpose of offsetting the expenses of offering the service both weigh in favor of the fee being a user fee.  Weighing all three factors together, we hold that the photocopying service fee functions as a user fee.

Inmates are charged between $3 and $10 as a co-pay fee for medical services initiated by an inmate and for prescription drugs.  The fee is paid only by inmates who utilize the medical services provided by the IDOC and is not paid by other inmates who do not utilize medical services.[4]  In addition, based upon the amount of the fee, the purpose of the medical services co-pay is primarily to defray the costs associated with offering medical services and to regulate the overuse of medical services.  The question here is whether an inmate can avoid paying the fee by not utilizing the service.  A valid argument can be made that an inmate does not choose to become ill and, therefore, the fee cannot be avoided because an inmate cannot avoid utilizing the

---

[3]  An indigent inmate is not charged the photocopy service fee.  SOP 405.02.01.001.

[4]  An inmate will not be denied access to medical, dental, or mental health services if he or she does not have the resources to pay for such services.  IDOC Policy 411.

9

medical services. However, in this case, the medical services co-pay applies to inmate-initiated medical services. This situation is similar to an individual who is not incarcerated and has an illness such as a cold, earache, or flu. Such an individual must determine whether to initiate a visit to a medical provider, requiring payment for medical services, or wait to see if the problem resolves without medical intervention. Although no one has the choice of whether to contract an illness, an inmate, like a free individual, can avoid the medical service co-pay by determining that an illness is not severe enough to warrant medical treatment. We recognize that an inmate may contract an illness so severe that his or her only reasonable choice is to seek medical services. Thus, the medical services co-pay may not be entirely avoidable, which weighs in favor of the fee not being a user fee. On the other hand, the fee's quid pro quo nature and purpose of offsetting the expenses of offering the service weigh in favor of it being a user fee. Weighing all three factors together, we hold that the medical services co-pay fee functions as a user fee.

The IDOC collected a commission of between $1.75 and $2.25 per telephone call made by inmates.[5] The fee is paid only by inmates who make telephone calls and is not paid by other inmates who do not utilize that service. In addition, an inmate can choose not to utilize the telephones and avoid paying the fee entirely, instead electing to communicate through visits or handwritten letters. Although Searcy claims, and the record supports, that an unknown portion of the telephone fee generates revenue for the IDOC, it is unclear whether the primary purpose of the telephone fee is to raise revenue or to compensate the IDOC for its expenses associated with providing the telephone services. Nevertheless, the quid pro quo nature of the fee and the voluntariness inherent in encountering the fee weigh in favor of it being a user fee. Considering the relevant factors, we hold that the telephone fee functions more as a user fee than a tax.

2.       **Support of penal system**

Article X, Section 1 of the Idaho Constitution mandates that the state establish and support penal institutions. While this provision authorizes state support of such institutions, it does not make such support exclusive, nor does it prescribe how or from what sources the funds

---

[5]       The contracted telephone provider charged the inmates $3.80 for collect calls, $3.60 for prepaid collect calls, and $3.40 for debit calls. From these charges, the IDOC received $1.75 for collect calls, $2.00 for prepaid collect calls, and $2.25 for debit calls.

shall be obtained. *State v. Johnson*, 50 Idaho 363, 368, 296 P. 588, 589-90 (1931). Rather, it leaves that decision to the legislature. *Id.*

The operating budget of the IDOC is established annually. The Miscellaneous Revenue Fund (MRF), which makes up part of the annual budget appropriated by the legislature for the operation of the state correction system, includes funds from the IMF, which is comprised, in part, of funds from the subject fees. Both IMF funds and funds from photocopying and medical co-pay fees are deposited in the MRF (in the state treasury) before ultimately being appropriated back to the IDOC each year as part of its annual budget from the legislature. Thus, the legislature eventually appropriates funds from the subject fees to the IDOC.

The funds necessary to support penal institutions are not required to be sourced from revenue produced by taxation. Rather, the policy is that state support may come from many sources. *Id.* Any funds produced incidentally from the subject fees are ultimately deposited into the state treasury. The legislature thereafter appropriates these funds back to IDOC as part of its annual budget. Thus, the IDOC is not invading the province of the legislature, as it is the legislature that ultimately prescribes the support of the IDOC through the budget and appropriation process.

### 3. Authority to promulgate rules

The authority to make rules and regulations to carry out an express legislative purpose or to effect the operation and enforcement of the same is not exclusively a legislative power and is administrative in nature. *State v. Heitz*, 72 Idaho 107, 112, 238 P.2d 439, 442 (1951). The Board is the body that has been expressly granted the control, direction, and management of the penitentiaries of Idaho. *State v. Reese*, 98 Idaho 347, 348, 563 P.2d 405, 406 (1977). Idaho Code Sections 20-212 and 20-244 empower the Board to make and adopt rules and regulations for the management of prison administration and discipline. *Waggoner v. State*, 121 Idaho 758, 760 n.3, 828 P.2d 321, 323 n.3 (Ct. App. 1991). Because the legislature cannot foresee all the practical difficulties that state agencies will encounter while carrying out their statutory functions, administrative agencies have the implied or incidental powers that are reasonably necessary in order to carry out the powers expressly granted. *Vickers v. Lowe*, 150 Idaho 439, 442, 247 P.3d 666, 669 (2011).

In the context of Idaho correctional facilities, the Board has the implied or incidental power to use such means as are reasonably necessary for the successful performance of its duties.

11

The legislature could not foresee all the practical difficulties that the Board would encounter in controlling, directing, managing, and governing Idaho's correctional facilities. Thus, the Board was granted broad authority to carry out such duties. Encompassed within this authority is the ability to establish institutional programs and services to inmates and to develop methods for implementing those programs and services. Otherwise, the Board would be unable to effectively govern the state's correctional facilities or care for the inmates in its custody, preventing it from fulfilling its constitutional and statutory mandate.

Furthermore, the Board ultimately derives its powers from Article X, Section 5 of the Idaho Constitution. *Mellinger v. IDOC*, 114 Idaho 494, 499, 757 P.2d 1213, 1218 (Ct. App. 1988). In accordance with that constitutional provision, I.C. § 20-209(1) provides:

> The state board of correction shall have the control, direction and management of such correctional facilities as may be acquired for use by the state board of correction and all property owned or used in connection therewith, and shall provide for the care, maintenance and employment of all prisoners now or hereinafter committed to its custody.

Pursuant to the broad statutory and constitutional grants of authority to the Board, the Board acted within its authority in enacting the fees through its policies and SOPs. Accordingly, the Board did not violate the separation of powers doctrine by implementing the fees at issue here.

While Searcy contends the fees must comply with I.C. § 20-212, a careful reading of that statute compels a different result. As pertinent to Searcy's argument, I.C. § 20-212 provides certain requirements that must be followed when the Board is enacting rules. However, Section 20-212 defines a "rule" as follows:

> (2)     "Rule" as used in this section means the whole or a part of the board of correction or department of correction's statement of general applicability that has been promulgated in compliance with the provisions of this section and that implements, interprets or prescribes:
> > (a)     Law or policy; or
> > (b)     The procedure or practice requirements of the board or department.
> The term includes the amendment, repeal, or suspension of an existing rule, *but does not include*:
> > (i)     *Statements concerning only the internal management or internal personnel policies of an agency and not affecting private rights of the public or procedures available to the public*; or
> > (ii)     Declaratory rulings issued pursuant to statute or the board's rules; or
> > (iii)     Intra-department memoranda; or

(iv)     Any written statements given by the department or board which pertain to an interpretation of a rule or to the documentation of compliance with a rule.

(Emphasis added.)  Prior to Searcy initiating the instant suit, the IDOC procedures imposing the fees here were not promulgated in accordance with the procedures in I.C. § 20-212 because those fees concerned only the internal management of the IDOC and did not affect the private rights of or the procedures available to the public.  Therefore, they are not rules as defined in I.C. § 20-212(2) and were not required to be enacted consistent with the process therein.

The controlling rule-making statute in this case is I.C. § 20-244, which provides:

> The state board of correction shall make and adopt such rules and regulations for the government and discipline of the correctional facility as they may consider expedient, and from time to time, change and amend the same as circumstances may require.  A printed copy of the rules and regulations shall be furnished to every officer and guard at the time he is appointed, and so much thereof as relates to the duties and obligations of the convicted persons shall be given to the convicted person upon reception at the state's correctional institutions.

Thus, this statute empowers the Board to make and adopt rules and regulations for the government and discipline of the correctional facility, which is consistent with the broad constitutional and statutory grant of authority to the Board.  This provision does not indicate that such rules and regulations are subject to legislative review, nor does it indicate that the procedures in I.C. § 20-212 are applicable.[6]

Searcy also relies upon *Smith v. Florida Dep't. of Corrs.*, 920 So. 2d 638 (Fla. Dist. Ct. App. 2005) for the proposition that the power to raise revenue is statutory and limited and that the only powers that may be exercised by the executive branch are those specifically granted by statute.  In *Smith*, the court held that a fee charged for photocopying services by the department of corrections to inmates was not supported by a specific grant of legislative authority, which was required under Florida law and was therefore invalid.  *Id.* at 643.  Specifically, the court determined that Florida's statutory scheme governing the department of corrections did not "authorize the Department to make monetary assessments; it simply authorize[d] the Department

---

[6]     Because these regulations are not required to be promulgated according to the statutory directive for rulemaking, they would not have the force and effect of law.  *See Asarco Inc. v. State*, 138 Idaho 719, 723, 69 P.3d 139, 143 (2003) (stating an agency action characterized as a rule must be promulgated according to statutory directives for rulemaking in order to have the force and effect of law).  However, they do provide an IDOC-required course of action to follow.

13

to collect monetary assessments." *Id.* at 641-42. In concluding that the department did not have the power to impose the photocopying fee, the court noted that the Florida legislature had enacted specific legislation authorizing the department to collect medical co-pay fees from inmates. *Id.* at 642. The court reasoned that this provision would have been unnecessary had the legislature intended to grant the department unbridled discretion to charge an inmate for any services rendered. *Id.*

Searcy's reliance upon *Smith* is misplaced. The court in *Smith* relied upon the language of a Florida statute and Florida case law interpreting that statute. These statutes and case law are not the law in Idaho. In Idaho, the Board is vested with the power to control, direct, and manage Idaho correctional facilities by both constitutional and statutory provisions. *See* IDAHO CONST. art. X, § 5; I.C. § 20-201A; I.C. § 20-209; I.C. § 20-244.

Searcy argues the legislature has enacted express statutory provisions for raising revenue which undermine the respondents' arguments. For example, I.C. § 20-225 limits the Board's authority to make monetary assessments against probationers and parolees:

> Any person under state probation or parole supervision shall be required to contribute not more than seventy-five dollars ($75.00) per month as determined by the board of correction. Costs of supervision are the direct and indirect costs incurred by the department of correction to supervise probationers and parolees, including tests to determine drug and alcohol use, books and written materials to support rehabilitation efforts, and monitoring of physical location through the use of technology. Any failure to pay such contribution shall constitute grounds for the revocation of probation by the court or the revocation of parole by the commission for pardons and parole. The division of probation and parole in the department of correction may exempt a person from the payment of all or any part of the foregoing contribution if it finds any of the following factors to exist:
> > (1)  The offender has diligently attempted but been unable to obtain employment.
> > (2)  The offender has a disability affecting employment, as determined by a physical, psychological or psychiatric examination acceptable to the division of probation and parole.
> Money collected as a fee for services will be placed in the probation and parole receipts revenue fund, which is hereby created in the dedicated fund in the state treasury, and utilized to provide supervision for clients. Moneys in the probation and parole receipts revenue fund may be expended only after appropriation by the legislature. This section shall not restrict the court from ordering the payment of other costs and fees that, by law, may be imposed on persons who have been found guilty of or have pled guilty to a criminal offense, including those who have been placed on probation or parole.

14

However, the plain language of this statute distinguishes it from the fees at issue in this case. This statute addresses the collection of fees from parolees and probationers who are out in the community and who are not residing as inmates in an IDOC correctional facility. Further, this provision makes the payment of supervision fees mandatory, as opposed to the subject fees here, which are imposed only when an inmate voluntarily obtains a service offered by the IDOC. Moreover, I.C. § 20-225 provides consequences for the failure to pay the cost of supervision. The fees at issue here have no attached consequences.

Searcy also cites the following statutes in support of this argument: I.C. § 20-225A (which requires an application fee for interstate compact applications); I.C. § 20-242 (which allows the Board to require a furloughed prisoner to pay for his or her board and personal expenses, including the costs of administering the prisoner's work furlough program); and I.C. § 20-245 (which provides authority for the Board to charge offenders performing community service work an hourly fee for purposes of providing worker's compensation insurance). However, these statutes are distinguishable because they govern conduct that occurs physically outside of the correctional facility. The grant of authority given to the Board under I.C. § 20-244 specifically addresses "government and discipline of the correctional facility." Thus, the policies and SOPs imposing the fees fall squarely within I.C. § 20-244, while the aforementioned statutes cited by Searcy address situations falling outside the scope of I.C. § 20-244.

Searcy also cites I.C. §§ 20-102A, 20-103, and 20-241 in support of this argument. However, these three statutes provide legislative authority for the penitentiary earnings reserve fund, legislative authority for a penitentiary income fund, and legislative authority to accept federal and other grants and donations of funds, respectively. These statutes also fall outside the scope of authority provided by I.C. § 20-244, as they encompass matters extending far beyond the correctional facility itself.

Finally, Searcy cites I.C. § 20-209D, which authorizes the Board to confiscate and retain contraband money and to dispose of other contraband property found in possession of inmates. However, this provision goes beyond the scope of "government and discipline of the correctional facility" and imposes a punitive forfeiture of property upon inmates found possessing contraband. Such governmental action, directing forfeiture of personal property, is a legislative function.

15

The supervision and maintenance of correctional facilities in Idaho is a function of the executive branch. Thus, the IDOC policies and SOPs at issue do not violate the separation of powers between the executive and legislative branches of state government. Accordingly, the district court properly dismissed Searcy's complaint.[7]

**B.      Attorney Fees**

The respondents argue they are entitled to attorney fees on appeal pursuant to I.A.R. 41 and I.C. §§ 12-121 and 31-3220A(16) because Searcy's claims are frivolous. An award of attorney fees may be granted under I.C. § 12-121 and I.A.R. 41 to the prevailing party, and such an award is appropriate when the court is left with the abiding belief that the appeal has been brought or defended frivolously, unreasonably, or without foundation. *Rendon v. Paskett*, 126 Idaho 944, 945, 894 P.2d 775, 776 (Ct. App. 1995). Idaho Code Section 31-3220A(16) provides that a court shall award reasonable costs and attorney fees to the respondent if the court finds that the action or any part of the action is frivolous. Here, we decline to award attorney fees because we conclude that Searcy has not brought or defended the appeal frivolously, unreasonably, or without foundation.

### IV.

### CONCLUSION

The district court did not err in determining that the subject fees are valid user fees, not unconstitutional taxes. Moreover, funds to support the Idaho penal system may be raised by means other than taxation, as it is the legislature that is empowered to prescribe the support of the IDOC through the budget and appropriation process. Finally, the Board did not violate the separation of powers by implementing the subject fees because it is statutorily and constitutionally authorized to do so. Accordingly, the district court's judgment in favor of the respondents is affirmed. Costs, but not attorney fees, are awarded to the respondents.

---

[7]      Searcy also argues that the district court erred in concluding that the commissions charged for telephone time and commissary goods are encompassed within I.C. § 67-3611. We do not base out decision on this statute and need not express any opinion as to its scope.

16

Judge GRATTON, **SPECIALLY CONCURRING**

I concur and write specially to provide further background regarding the regulation and rulemaking process applicable to the Idaho State Board of Correction (Board), including the Idaho Department of Correction (Department). In 1947, the State Board of Prison Commissioners was abolished and the Board was created. 1947 Idaho Session Laws, ch. 53, § 12, p. 61. From that same Act, Idaho Code § 20-212 read:

> The state board of correction shall make all necessary rules and regulations to carry out the provisions of the act not inconsistent with express statutes or the state constitution. They shall fix the time and place of meetings, the order of business, the form of records to be kept, the reports to be made, and all other regulations necessary to the efficient management and control of the state penitentiary and all properties used in connection therewith.

That statute was not amended until 1999, to which I will return. Idaho Code § 20-244, also enacted by the 1947 Act, presently reads:

> The state board of correction shall make and adopt such rules and regulations for the government and discipline of the correctional facility as they may consider expedient, and from time to time, change and amend the same as circumstances may require. A printed copy of the rules and regulations shall be furnished to every officer and guard at the time he is appointed, and so much thereof as relates to the duties and obligations of the convicted persons shall be given to the convicted person upon reception at the state's correctional institutions.

When the Idaho Administrative Procedures Act (IDAPA) was adopted, 1965 Sess. Laws, ch. 273, § 1, p.702, the Board (together with the state militia) was exempted from the definition of "agency" subject to the Act and remains so today.[1] I.C. § 67-5201(2). By virtue of this provision, prison administration and disciplinary proceedings are not subject to the Administrative Procedures Act. *Waggoner v. State*, 121 Idaho 758, 760, n.3, 828 P.2d 321, 323, n.3 (Ct. App. 1991).

The Department was created in 1999. Idaho Code § 20-201, as added by 1999 Sess. Laws, ch. 311, § 4, p. 777. At the same time, I.C. § 20-212 was amended to provide for a very limited application of IDAPA to the Board. Idaho Code § 20-212 provides:

> (1) The state board of correction shall make all necessary rules to carry out the provisions of this chapter not inconsistent with express statutes or the state

---

[1] It seems self-evident that it is the nature of the activities of the two entities exempt from the Act that support their exemption. Their primary function is not, as with others, serving the general public directly.

constitution and to carry out those duties assigned to the department of correction pursuant to the provisions of chapter 8, title 20, Idaho Code. The board shall fix the time and place of meetings, the order of business, the form of records to be kept, the reports to be made, and all other rules necessary to the efficient management and control of the state penitentiary and all properties used in connection therewith.[2] All rules of the board shall be subject to review of the legislature pursuant to sections 67-454,[3] 67-5291[4] and 67-5292,[5] Idaho Code, but no other provisions of chapter 52, title 67, Idaho Code,[6] shall apply to the board, except as otherwise specifically provided by statute. When making rules required by this section, the board or the department shall submit the rules to the office of the state administrative rules coordinator, in a format suitable to the office of the state administrative rules coordinator as provided in section 67-5202, Idaho Code, and the board or department shall pay all the fees provided in section 67-5205, Idaho Code. The office of the state administrative rules coordinator is authorized and shall publish the board or department's rules in the administrative bulletin. Additionally, whenever the board or department desires to amend, modify or repeal any of its rules, it shall follow the procedure provided in this section. All rules, or the amendment or repeal of rules shall be effective thirty (30) days after the date of publication by the office of the administrative rules coordinator. If the board determines that the rules need to be effective at a sooner date, they shall issue a proclamation indicating that the public health, safety and welfare is in jeopardy and, if the governor agrees, the rules shall be effective upon the governor signing the proclamation.

(2) "Rule" as used in this section means the whole or a part of the board of correction or department of correction's statement of general applicability that has been promulgated in compliance with the provisions of this section and that implements, interprets or prescribes:

(a) Law or policy; or

---

[2]    The 1999 amendment, to this point, deleted the phrase "and regulations" in the first sentence of the original Act, identified the chapter as "chapter 8, title 20, Idaho Code," and changed "other regulations" to "other rules." The remainder of the section was added in 1999.

[3]    Idaho Code § 67-454 provides for legislative subcommittees to review administrative rules.

[4]    Idaho Code § 67-5291 provides generally for report from legislative subcommittees upon review of proposed rules and adoption or rejection by the legislature. Note that a proposed rule may be rejected where it is determined that the rule violates the legislative intent of the statute under which the rule was made.

[5]    Idaho Code § 67-5292 provides that the administrative rules expire automatically each July 1, unless extended.

[6]    Chapter 52, title 67, Idaho Code is the Idaho Administrative Procedures Act. Thus, except as expressly set out in the amendment, the Board is not subject to IDAPA.

(b) The procedure or practice requirements of the board or department. The term includes the amendment, repeal, or suspension of an existing rule, but does not include:

(i) Statements concerning only the internal management or internal personnel policies of an agency and not affecting private rights of the public or procedures available to the public; or

(ii) Declaratory rulings issued pursuant to statute or the board's rules; or

(iii) Intra-department memoranda; or

(iv) Any written statements given by the department or board which pertain to an interpretation of a rule or to the documentation of compliance with a rule.

(3) At the same time that the proclamation of rulemaking is filed with the coordinator, the board or department shall provide the same notice, accompanied by the full text of the rule under consideration in legislative format, as well as a statement of the substance of the intended action, to the director of legislative services. If the rulemaking is based upon a requirement of federal law or regulation, a copy of that specific federal law or regulation shall accompany the submission to the director of legislative services. The director of legislative services shall analyze and refer the material under consideration to the germane joint subcommittee created in section 67-454, Idaho Code.

(4) The board or department shall prepare and deliver to the germane joint subcommittee a statement of economic impact with respect to a rule if the germane joint subcommittee files a written request with the board or department for such a statement. The statement shall contain an evaluation of the costs and benefits of the rule, including any health, safety, or welfare costs and benefits. The adequacy of the contents of the statement of economic impact is not subject to judicial review.

As can be seen, the rulemaking process for the Board is rather summary in comparison to general agency rulemaking under IDAPA, I.C. § 67-5201, et seq. (which includes 47 separate sections). For instance, provisions related to negotiated rulemaking and notice to interested parties, I.C. § 67-5220; public participation, I.C. § 67-5222; rulemaking record, I.C. § 67-5229; contested cases, I.C. § 67-5240 through 5253; declaratory rulings, I.C. § 67-5255; judicial review of contested cases, I.C. § 67-5270 through 5277; and declaratory judgment on validity of application of rules, I.C. § 67-5278, are not applicable to the Board. Moreover, provisions relating to a "fee or charge" in I.C. § 67-5221(1)(b) (public notice of proposed rulemaking), I.C. § 67-5224(2)(d) (public notice of adoption of rule), and I.C. § 67-5226(2) (relating to temporary rules) are not applicable to the Board. By contrast, under I.C. § 20-212, the Board submits the proposed rules to the state administrative rules coordinator who is authorized to publish them in the administrative bulletin. The rules are effective thirty days after publication.

19

At the same time, the Board submits the rules to the director of legislative services who, in turn, sends them to the germane joint subcommittee who, in turn, submits them to the legislature. I.C. § 67-5291.

In response to the amendment of I.C. § 20-212 in 1999, the Board promulgated rules dated November 5, 1999. The "Scope" of the rules was stated as follows: "These rules are established to govern the duties and responsibilities delegated to the Board by law which affect a right of the public or a process to which the public has access." IDAPA 06.01.01.001.02.[7] Indeed, a review of the rules promulgated on November 5, 1999, reveals that all relate to public access or process issues.[8] Evidence in our record indicates that the Department manages and administers over 400 internal policies and procedures. Unlike the Board IDAPA rules, the Department policies and procedures do not have the force and effect of law, though they do provide a Department required course of action to follow. I note here that prior to 1999, the Department had policies (and at least some standard operating procedures) relative to medical

---

[7]    Thus, it is clear that the Board determined, in 1999, in response to the amendment, that the scope of its rulemaking obligation was limited to its duties and responsibilities which affect a right of the public or process accessible to the public. By that, it, and the statute, certainly mean the general public, not inmate population. Note that the language used in the "Scope" is nearly the same as used in Idaho Code § 20-212(2)(b)(i). Note further that the statement of the scope of the rulemaking obligation went through legislative services, the germane subcommittee, and the legislature.

[8]    The sections in the 1999 rules involve issues relating to the public: board meetings, tobacco-free properties, service of process, public records act, literature distribution, media and public relations, custody of evidence (including that claimed to belong to a member of the public), central office visitors, public visits and tours of facilities, research requests, executions (including media and witnesses), county jail use, housing inmates in non-department facilities, inmate marriages, deceased inmates, medical care (including notification of family, contracts with hospitals, children born to inmates, and organ donations), correspondence with inmates, inmate religious practices (including access to representatives of their faith), attorney visits and court proceedings, inmate funds receipt and maintenance (including money received from outside sources), telephones (including monitoring of calls to the outside), searches of persons and vehicles entering department facilities, access to department facilities, public participation in inmate athletic events, visiting inmates, volunteer services, public participation in program activities, inmate hobby craft (including sales to the public), business with inmates and labor of inmates (including labor for governmental entities and non-profits, and prohibiting solicitation of inmates for employment), probation and parole supervision (including home and vehicle searches and visits to places of employment), and community work center advisory board.

co-pay (10-8-1998), commissary (3-15-1996), telephones (1981), and photocopies (8-15-1995).[9] Ostensibly, as the policies and regulations underlying these fees were not directly related to the public, no specific reference or rule was set out in the Board IDAPA rules (although, certain fees, including hobby craft, photocopying, and medical co-pay were added to the rules in late 2012).[10]

As noted in the majority opinion, Searcy contends that, even if authorized, the fees did not comply with the rulemaking requirements of I.C. § 20-212. In essence, this argument boils down to a dispute over the scope of the rulemaking obligation.

Searcy's contention misses the mark because the agency's actions relevant to the claims in this case are not subject to the rulemaking process. When determining whether an agency action is a rule, and is thus subject to the rulemaking process, a court examines if the agency action: "(1) is a statement of general applicability and (2) implements, interprets, or prescribes existing law." *Asarco Inc. v. State*, 138 Idaho 719, 723, 69 P.3d 139, 143 (2003). However, the Idaho Supreme Court has recognized that this definition is too broad to be workable. *Id.*[11]

---

[9]     It is not clear from the record whether each of the fees at issue here were implemented and/or have remained the same over the time period.

[10]     The Board rules have been amended and added to from time to time, as some rules bear dates of 7-6-01, 1-4-02, 10-5-07, 10-31-08, 11-6-09, 11-5-10, 11-4-11, 1-11-12, and 11-2-12. As listed above, the subject matter of the rules has largely remained the same. In November 2010, a new provision was added dealing with meritorious reduction of sentence, IDAPA 06.06.01.136 and in November 2012, a section, relevant here, was added for department fee structure, IDAPA 06.06.01.013, which, among others, specifically included the hobby craft surcharge, photocopying fee, and medical co-pay fee. It is unclear from the record why these two new sections, which seemingly do not affect the public directly, were added as rules. The "Scope" of the rules has not changed. Notably, the commissary and telephone fees were not added along with the hobby craft, photocopying, and medical co-pay fees.

[11]     Quite apart from this analysis, the Idaho Supreme Court has held that: "A charge is not necessarily 'imposed' when it is voluntarily agreed to and paid in exchange for good and valuable consideration." *Buckskin Properties, Inc. v. Valley County*, 154 Idaho 486, 492, 300 P.3d 18, 24 (2013). There, the developer complained that a fee it paid was an illegal impact fee because the County had, as all acknowledged, not imposed the fee in accordance with the requirements of the Idaho Development Impact Fee Act. *Id.* at 489, 300 P.3d at 21. Nonetheless, the Supreme Court determined that the developer and the County were at liberty to voluntarily agree to the payment in exchange for good and valuable consideration. Based upon the evidence and having failed to register a complaint at the time of payment, the developer could only be said to have paid the fee voluntarily, even though the developer complained that

21

Accordingly, the Supreme Court adopted six characteristics to be considered which are indicative of whether an action is consistent with a statement of general applicability: "(1) wide coverage, (2) applied generally and uniformly, (3) operates only in future cases, (4) prescribes a legal standard or directive not otherwise provided by the enabling statute, (5) expresses agency policy not previously expressed, and (6) is an interpretation of law or general policy." *Id.*; *see also State v. Alford*, 139 Idaho 595, 597, 83 P.3d 139, 141 (Ct. App. 2004).

The Idaho Supreme Court has recognized that policies and procedures manuals that concern only the internal management of any agency and not affecting private rights or procedures available to the public are not, and need not be, rules. *Serv. Employees Int'l Union, Local 6 v. Idaho Dep't of Health & Welfare*, 106 Idaho 756, 758-59, 683 P.2d 404, 406-07 (1984). Such internal guidelines are subject to change when necessary, though they do not have the force and effect of law. *Id.* In *Alford*, this Court held, after considering the above factors, that Idaho State Police action of adopting the use of a particular breath testing machine was not rulemaking. By adopting the use of the breath testing machine, the Idaho State Police did not prescribe new legal standards, express agency policy, or interpret law or policy. Instead, the Idaho state police, through internal management, properly authorized the use of certain breath testing equipment. Here, as explained by the majority, the challenged fees are internal in nature. *See* I.C. § 20-212(2)(b)(i). The fees Searcy complains of do not prescribe new legal standards, express agency policy, or interpret law or policy. Thus, they are not rules and are not subject to the rulemaking process.

As further support, I return to a comparison of I.C. §§ 20-212 and 20-244 as enacted in 1947. First, it seems apparent that, lest the statutes be redundant, they deal with different matters. Idaho Code § 20-212 stated that the Board shall make all rules *and regulations* as "necessary to the efficient management and control of the state penitentiary and all properties used in connection therewith." On the other hand, I.C. § 20-244 stated that the Board shall make all rules and regulations "for the government and discipline of the correctional facility." As I read these statutes, I.C. § 20-212 deals with rules and regulations of the Board relative to its overall function as a state institution, including the efficient management of its properties. Idaho

the "agreed" upon fee was actually not voluntary, but a condition of approval. *Id.* at 492-93, 300 P.3d at 24-25. Certainly, the challenged fees in this case were charged for good and valuable consideration.

Code § 20-244 deals with rules and regulations relative to governance and discipline of inmates. Second, as a consequence, in 1999 when the Department was created, the legislature saw fit to require the Board, although still not an "agency" and on a limited basis, to adopt rules as to its public (non-internal) operation as a state entity. I.C. § 20-212. Certainly, the legislature had a legitimate reason for oversight of the Board's rules regarding its functioning as a state entity and efficient management of the penitentiary and other properties. In order to comport with this rulemaking requirement, the legislature deleted the term "regulation" from the statute. Third, at the same time, the legislature left the making of rules and regulations for the governance and discipline of the inmate population intact. I.C. § 20-244. Quite telling is the fact that the legislature left to the Board the making of such rules and procedures as "they" may consider expedient, with leave to change and amend the same as "circumstances" may require. *Id*. Finally, the fact that the statute mandates that the printed rules and regulations be given to each guard and to each inmate as they relate "to the duties and obligations" of the inmate demonstrates that such rules and regulations regard internal management not generally affecting the public. *Id*. The fees challenged here fall under internal governance and management and neither affect the public nor are the type of state institution "efficient management" rules within the contemplation of the requirements of I.C. § 20-212.

Judge LANSING, **DISSENTING**.

I agree with the majority's view that the broad authority conferred upon the Idaho State Board of Correction by Article X, § 5 of the Idaho Constitution and Idaho Code § 20-209 to control, direct, and manage the correctional facilities of this state encompasses the authority to impose charges for goods or services provided to inmates. I also agree that the charges at issue here bear more of the earmarks of fees than of taxes. Therefore, I concur in the majority's conclusion that the imposition of these charges does not violate the constitutional separation of powers or intrude upon a purely legislative prerogative.

I disagree, however, with the majority's conclusion that the manner in which the fees were adopted comports with statutory requirements. Although the Idaho Constitution and statutes permit the Board to impose fees, Idaho statutes also prescribe a rulemaking process through which such fees must be established. That is, I.C. § 20-212(1) requires that such action be taken through a rulemaking process that includes legislative review of the rules. With respect to some of the challenged fees, the Board has never complied with that rulemaking process. In

23

my view, those fees that have never been authorized by the rule adopted in compliance with I.C. § 20-212 are invalid.

Section 20-212(1) includes the following provisions:

> The state board of correction shall make all necessary rules to carry out the provisions of this chapter not inconsistent with express statutes or the state constitution and to carry out those duties assigned to the department of correction pursuant to the provisions of chapter 8, title 20, Idaho Code. The board shall fix the time and place of meetings, the order of business, the form of records to be kept, the reports to be made, and all other rules necessary to the efficient management and control of the state penitentiary and all properties used in connection therewith. All rules of the board shall be subject to review of the legislature pursuant to sections 67-454, 67-5291 and 67-5292, Idaho Code, but no other provisions of chapter 52, title 67, Idaho Code, shall apply to the board, except as otherwise specifically provided by statute.

Subsection (2) of the same statute defines "rule" as:

> the whole or a part of the board of correction or department of correction's statement of general applicability that has been promulgated in compliance with the provisions of this section and that implements, interprets or prescribes:
> (a) Law or policy; or
> (b) The procedure or practice requirements of the board or department. . . . but does not include:
>> (i) Statements concerning only the internal management or internal personnel policies of an agency and not affecting private rights of the public or procedures available to the public; or . . . .

In addition, I.C. § 20-244 directs that "[t]he state board of correction shall meet and adopt such rules and regulations for the government and discipline of the correctional facility as they may consider expedient, and from time to time, change and amend the same as circumstances may require." In my view, these directives to adopt rules for the "management and control of the state penitentiary and all properties used in connection therewith" and for "the government and discipline of the correctional facility," including rules to implement or prescribe "policy," require the adoption of rules to authorize user fees charged to inmates.

The legislative intent that imposition of fees by administrative agencies must be accomplished by formal rulemaking is made clear in provisions of the Idaho Administrative Procedure Act, I.C. § 67-5201, *et seq*. (IDAPA). Sections 67-5221(1)(b), 67-5224(2)(d), and 67-5226(2) all contemplate formal rulemaking and legislative review for any "fee or charge" to be imposed or increased. Although Idaho Code § 20-212(1) exempts the Board from most of the

rulemaking *procedures* required of other agencies under the foregoing statutes, it does not exempt the Board from the obligation to adopt rules and submit them for legislative review as a prerequisite to imposition of fees.

The majority holds that the challenged fees are exempted from the rulemaking requirements by I.C. § 20-212(2)(b)(i), which provides that the term "rule" as used in the statute does not include "statements concerning only the internal management or internal personnel policies of an agency and not affecting private rights of the public or procedures available to the public." It is not apparent to me that this statutory language creates the broad exemption that the majority finds there. In my view, "internal management or internal personnel policies" ordinarily refers to administrative functions such as organizational structure and lines of authority, financial management and accounting, and personnel policies. If the Section 20-212(2)(b)(i) exception to the rulemaking requirements for "internal management" is as broad as the majority holds, that exception would swallow the remainder of the statute.[1] It would also be in direct conflict with Section 20-244 which, as noted above, expressly requires the promulgation of rules "for the government and discipline of the correctional facility."

The majority holds, to the contrary, that terms of I.C. § 20-244 *exempt* the challenged fees from the rulemaking procedures mandated by Section 20-212. I find no such exemption in Section 20-244. Rather, the rulemaking directives of Section 20-212 unambiguously apply to rules required by Section 20-244. Section 20-212(1) directs that the Board "shall make all rules necessary to carry out *the provisions of this chapter*," and then identifies the rulemaking procedures to be followed by the Board. Because Section 20-244 is part of the same chapter as Section 20-212 and uses the term "rules," which is defined in Section 20-212, the rulemaking authority conferred by Section 20-244 is expressly subject to the Section 20-212 procedures for adopting rules, including submission to the legislature for approval.

In its arguments on appeal, the Board relies upon one additional statute, I.C. § 67-3611, for the contention that it was not required to adopt rules authorizing the fees imposed on prisoners. That section states:

---

[1] It should also be noted that precisely the same exclusion for "statements concerning only the internal management or internal personnel policies of an agency" is found in the IDAPA definition of "rules," I.C. § 67-5301(19)(b)(i), yet as noted above, IDAPA also requires formal rulemaking for the imposition of fees or charges.

> All state institutions, educational, charitable, penal and otherwise, shall be allowed to expend the funds arising from the sale of services, rentals or personal property, stocks, farm or garden produce, or other goods, or articles produced within or by the institution, for the maintenance, use and support of said institution without reducing the amount of the appropriations made to such institutions. . . .

This statute is irrelevant, however, to the issue at hand. It only authorizes institutions to *expend* funds from sales of goods or services without a reduction of the amount of the legislative appropriations to the institution; it says nothing at all about how such sales are to be authorized or implemented in the first instance, and it includes no language exempting such sale programs from otherwise applicable rulemaking requirements.

Prior to the initiation of this lawsuit, the Board had not adopted or submitted for legislative review rules authorizing any of the challenged fees charged to inmates. After this lawsuit was filed, the Board adopted rules for the hobby craft charge, photocopy fees, and medical co-pay fees, but not for the telephone and commissary fees. Therefore, in my view, the district court's summary judgment in favor of the Board should be reversed and this case remanded for further proceedings.